J. W. BROWN AND P. W. BROWN, Administrators of the
Estate of D. T. BROWN, Deceased, D. T. BLODGETT
AND ALVILDA R. BROWN, Substituted . Plaintiffs,
Appellants, V. R. B. AND L. E. ZACHARY, Appellees,
JULIA A. BROWN, Intervener.

**Indorsement Without Recourse:**  MISREPRESENTATIONS:  *Rescission.*
Where representations of the assignor of notes secured by mort-
gage on land in another state, with reference to the land and
notes, were expressions of opinion, and based on information only,
and the assignee investigated the value of the land and the notes,
without hindrance by the assignee, and lived three years after
without making complaint, and it was not shown that he did not
know that the notes were worthless when he purchased them, his
representatives were not entitled to rescind on the ground of
fraudulent representations as to the value of the notes.  Such
case is not within the rule that one who endorses worthless paper
without recourse is liable for the consideration received, when the
indorser does, and the indorsee does not, know the paper to be
worthless.

**Admissions.**  A letter, written by the assignor to the assignee shortly
before the transaction, in which he said, "I took this paper myself
and know it to be good, and a good man behind it," would not be
presumed to refer to the notes in suit, in the absence of evidence.

**Depositions:**  *Privies.*  Depositions taken before one of the defend-
ants was made a party to the suit, are not admissible against him,
although his interest in the subject litigated was older than the
litigation.  Citing *Jenkins v. Bisbee*, 1 Edw. Ch. 377; *Hutchinson
v. Reed Hoof*, Ch. 316; *Pratt v. Barker*, 1 Sim. 1; *Wood v. Swift*, 81
N. Y. 31.

*Appeal from Jasper District Court.*—HON. D. RYAN,
Judge.

TUESDAY, MAY 25, 1897.

IT is charged in the petition that in April, 1890,
D. T. Brown, since deceased, entered into a verbal
contract with the defendant, R. B. Zachary, by the
terms of which said Brown was to transfer a certain

three hundred and thirty-nine acres of land in Jasper county, Iowa, and a certain one hundred and sixty acres of land in Cedar county, Neb., to said Zachary, for an agreed consideration of fifteen thousand dollars, to be paid as follows: Zachary was to assume and pay a certain six thousand five hundred dollar mortgage then on the Jasper county land, to place to the credit of said Brown three thousand five hundred dollars in the bank of L. E Zachary & Son at Prairie City, Iowa, and to transfer to Brown, without recourse, four notes, signed by one E. B. Fullington, aggregating five thousand three hundred dollars. These notes, together with one for one thousand dollars, were to be secured by a second mortgage on six hundred and forty acres of land in Woodson county, Kan., the first mortgage thereon being for six thousand five hundred dollars. These notes to be turned over to Brown were to be further secured by a mortgage on certain personal property. In an amendment to the petition it is alleged that this agreement was in writing. It is charged that, for the purpose of inducing Brown to enter into the contract, said Zachary reported to Brown that the maker of the notes was solvent and able to pay the same, having property consisting of six hundred and forty acres of land in Woodson county, Kan., which was mortgaged for an ample security for the notes after paying prior liens; that said lands so mortgaged were worth twenty dollars per acre; that said representations were, in fact, false, and known to be so by said Zachary; that they were relied upon by Brown, who on the faith thereof, entered into the contract. Zachary filed an answer in denial of the affirmative allegations of the petition. He also averred that a trade was made with Brown for the land described in the petition, which contract was in writing. He attaches a copy of said contract to his answer, and avers full compliance with its terms

on his part. Thereafter Julia A. Brown, the widow
of D. T. Brown, filed her petition of intervention,
repeating the allegations of the petition, and averring
that she is the sole devisee and legatee under the will
of her late husband, that there is more than enough
personal property to pay the debts of said estate, and
prays for a rescission of the contract and an account-
ing for the rents of the land. The plaintiffs, in their
petition, ask a judgment for the amount of the Full-
ington notes, and the establishment of a vendor's lien
upon the lands traded to Zachary. November
16, 1894, more than eight months after the
original petition was filed, and after a large
number of depositions had been taken in the case,
the plaintiff and intervener amended their petitions,
making L. E. Zachary a party defendant, and alleging
that the two Zacharys colluded and conspired together,
for the purpose of effecting a transfer of the notes to
Brown and of obtaining from him the title to the real
estate conveyed by Brown under the contract; that L.
E. Zachary was in fact the owner of the Fullington
notes, and of the real estate conveyed to Brown under
the contract, or at least of an interest therein, and was a
party to all of the alleged representations. Thereafter
the defendants answered the petition as amended by
adopting the answer of R. B. Zachary, and further
pleaded that, prior to the commencement of this suit,
the cause of action had been purchased by D. T. Blod-
gett. Afterwards said Blodgett and the defendant
Alvilda R. Brown filed an amendment to the petition,
asking to be substituted as defendants, and in a further
amendment averred that Julia A. Brown had, after
this suit was commenced, transferred to said parties
all her rights in the cause of action, and they tender
and offer to surrender the notes and ask a rescission
of the contract of sale between D. T. Brown and R. B.
Zachary. They also reaffirm all allegations made in

the petition and in the petition of intervention. To this answer and amendment defendants filed a general denial. The cause was tried to the court, and a decree entered, on December 3, 1895, dismissing plaintiff's petition and substituted petition and the petition of intervention upon their merits, and for costs against the said substituted plaintiffs and intervener· The substituted plaintiffs and the intervener appeal.— *Affirmed.*

*Howard J. Clark* for appellants.

*H. S. Winslow* and *W. G. Clements* for appellees.

KINNE, C. J.—I. November 16, 1894, L. E. Zachary was made a party defendant. Plaintiffs charged that he was a party to the fraudulent transactions stated in the petition and to the representations made, and that the trade was the result of a conspiracy by the Zacharys to defraud Brown. It appears from the evidence that the land purchased by Fullington, and by him mortgaged to secure the five thousand three hundred dollars in notes, was owned by L. E. Zachary, and by him conveyed to Fullington. Prior to the time L. E. Zachary was made a party defendant, the plaintiff had taken the depositions of thirty-nine witnesses. This evidence was duly objected to by L. E. Zachary, when it was offered, on the ground that, as against him, it was incompetent and immaterial. We think all of this evidence was improperly admitted as against L. E. Zachary. Not having acquired any interest in the matter in controversy after the suit was instituted, he did not stand in privity to the defendant, R. B. Zachary, and if not made a party defendant, would not be bound by any decree entered in the case. *Brady v. Burke*, 90 Cal. 6 (27 Pac. Rep. 52); *Campbell v. Hall*, 16 N. Y. 575; *Lange*

*v. Braynard*, 104 Cal. 156 (37 Pac. Rep. 868).   It is said that, "to make. one a party privy. to an action, he must be one who had acquired an interest in the subject-matter of the action, either by inheritance, succession, or purchase, from a party to the action, subsequent to its institution.   A privity antedating the action does not work an estoppel." *Bryan v. Malloy*, 90 N. C. 508. What is said in the cited cases is applicable to the case at bar, as L. E. Zachary did not acquire any interest *pendente lite* but prior to the commencement of this action.   As to him, therefore, when he became a party, it was a new action, and he could not, against his objection, be bound or in any way affected by depositions taken by the plaintiffs before he was made a party to the action.   *Jenkins v. Bisbee*, 1 Edw. Ch. 377; *Hutchinson v. Reed*, Hoff. Ch. 316; *Pratt v. Barker*, 1 Sim. 1; *Wood v. Swift*, 81 N. Y. 31.   The depositions taken after L. E. Zachary was made a party utterly fail to establish a case against him.   It follows that in any event the decree below was correct, so far as L. E. Zachary was concerned.   Appellee claims that L. E. Zachary was a necessary party to the suit, and therefore, as no decree could, under the circumstances, be entered against him, it follows that none could properly be entered against R. B. Zachary.   As, in any event, the case as to R. B. Zachary must be affirmed, we need not determine whether the failure to make a case against L. E. Zachary would preclude plaintiffs from recovering against R. B. Zachary upon proper evidence as against him.

II.   Before discussing the case as made by the evidence against R. B. Zachary, we may properly say that this record is incumbered by a large amount of evidence which we cannot consider.   We cannot undertake, within the limits of an ordinary opinion, to point out the incompetent, immaterial, and hearsay evidence, but shall treat the case as if all such evidence

had been eliminated from the record. It is incumbent on plaintiffs to establish the alleged fraud and fraudulent representations. This they undertake to do by showing statements claimed to have been made by R. B. Zachary, and declarations said to have been made by D. T. Brown, deceased.

While there is some evidence tending to show that Zachary admitted making certain statements to Brown regarding the trade, the land, and the Fullington notes, yet, considering all of the evidence touching this matter, we think the weight of it is to the effect that whatever statements were made by Zachary to Brown were nothing more than mere opinions as to the value of the Kansas land and the notes, based upon information or belief. The evidence of plaintiffs' witnesses regarding this matter is overcome by that of the defendants' witnesses.

Stress is laid by plaintiffs upon a certain letter, said to have been written by Zachary to Brown, in which the former speaks of certain mortgage paper which he would trade to Brown, and in which letter it is said: "I took this paper myself, and know it to be good, and a good man behind it." This letter does not in any way show what notes or mortgage paper is referred to, and it is only by assuming something not in the letter that we can say that it had reference to the Fullington notes. We cannot enter into an elaborate discussion of the evidence. We, after a full examination of it, conclude that the claim that Zachary made the representations alleged as to the notes and land, and the value of each, is not supported by the evidence, nor does it appear that Zachary practiced a fraud upon D. T. Brown by withholding from him facts relating to these matters. Again, there is evidence, much of it showing that Brown did investigate the land and its value, the notes and their value, and satisfied himself

regarding the matter.   True, he did not go to Kansas, but he did by letter conduct such investigation.   It is said he wrote only to two parties,—one the agent of Zachary, and the other a friend of said agent,—and that arrangements had been made by Zachary in advance as to how the letters should be answered. The evidence does not show that Zachary had asked these parties to make any representations other than the truth as to the matters inquired about.   Nor does it appear that Brown did not make inquiry from other persons. Again, it appears that Brown had ample time and opportunity to investigate regarding the land and its value, and the notes,—in fact, as to all matters embraced in the deal between him and Zachary. There is no evidence tending to show that Zachary said or did anything to prevent Brown from making such investigation.   He had it in his power to have ascertained the real facts touching the matters now complained of, and, as he was in no manner prevented from making such an investigation as he saw fit, if he failed so to do, neither he nor those now representing him should be heard to complain.   There is another fact worthy of notice.   Brown lived for about three years after this trade was consummated, and there is no competent evidence which tends to show that he made any complaint.   His own wife did not know anything regarding the conditions of the trade.   It may be that the Kansas land was not worth more than eight or ten dollars an acre, and it is likely that the Fullington notes were of much less value than their face; but the evidence fails to show the false representations or fraud alleged, and it appears that Brown had ample opportunity to investigate the character and value of the land and notes, and, under all the circumstances disclosed by this record, we think it is clear that plaintiffs have failed to make a case.

III.   Appellants say that it is conclusively established that the five thousand three hundred dollars of notes were worthless, and that Zachary knew that fact when he transferred them to Brown, and that the maker of them was insolvent, and that Brown paid full value for them, not knowing that the maker was insolvent and the notes worthless.   Counsel rely upon *Watson v. Cheshire*, 18 Iowa, 202, and *Dayton v. Tillotson*, 39 Iowa, 404.   The doctrine of these cases is, that if one, by indorsement without recourse of negotiable paper, transfers the paper to another, knowing the paper to be worthless, and the assignee receives it in good faith, in ignorance of such fact, paying a valuable consideration therefor, he may recover from the assignor the consideration paid.   We do not think that the facts disclosed by the evidence bring this case within the rule of the cited cases.   We doubt if it can be said, under the evidence, that these Fullington notes were worthless.   True, there is much evidence to that effect, but the maker of the notes himself testifies that he owns one hundred and sixty acres of land in Kansas, in addition to the land upon which the mortgage rested, which secured the notes.   What its value was is not made to appear.   We cannot presume that this one hundred and sixty acres of land was of no value.   It may be admitted that Brown paid a valuable consideration for the notes.   Even if the evidence did show that the notes were worthless, and that such fact was known to Zachary, still it fails to show that Brown was ignorant of the character of the paper which he agreed to take.   It does not show that he did not know it was worthless, if such was the fact.   On the contrary, as we have said, it is shown that he made investigation touching all the facts, and did know of the real character of the paper which he afterwards took.   Under the circumstances disclosed,

the rule of law laid down in the cases relied upon cannot avail plaintiffs.

Inasmuch as the case must be affirmed upon the merits, we shall not pass upon appellee's motions. The decree of the district court is correct.—AFFIRMED.