STATE OF IOWA v. D. T. BLODGETT, Appellant.

**Criminal law:** FORGERY: INTENT: EVIDENCE. On the question of defendant's fraudulent intent in making an alleged false school order for the payment of money, the evidence is reviewed and held sufficient to take the issue to the jury.

**Same:** FORGERY: SCHOOL ORDER: INDICTMENT. In view of the provisions of Code section 4853, it is not necessary that there should have been a resolution by the school officers directing the issuance of a school order to render the making of a false order forgery, nor is it necessary to allege an intention to defraud any particular person.

**Change of venue:** DISCRETION. In passing upon a motion for change of venue on the ground of prejudice of the judge, the court should not base the ruling upon his inclinations, or upon the belief of the accused, or the proprieties of the situation, but should determine the question according to the very right of it; and unless an abuse of discretion is shown his ruling will be sustained.

**Criminal law:** FORGERY: UTTERING FORGED INSTRUMENT: FORMER JEOPARDY. Forgery and the uttering of a forged instrument are distinct offenses;; and the crime of forgery is not a degree of the crime of uttering, nor is it necessarily included therein. Fraudulent intent in the making of a forged instrument is essential to the crime of forgery, though it need not be proven to establish the crime of uttering; and where there is no doubt of the identity of the defendant accused in both instances, or the identity of the transactions, the question of former jeopardy is one of law for the court.

**Same.** An acquittal of the crime of uttering a forged instrument is not a bar to prosecution for forging the same instrument.

**Criminal law:** REVIEW ON APPEAL: WHAT CONSTITUTES THE RECORD. The statute requiring the Supreme Court to examine the record without regard to technical errors not affecting the substantial rights of the parties, has reference to the record on which the cause was submitted, which may be a transcript of all papers filed in the case, except those returned by a committing magis-

trate, and all. entries in the record book, but not including the evidence.
.Weaver, J., dissenting.

*Appeal from Polk District Court.*—HON. W. G. CLEM-
ENTS, Judge.

MONDAY, JUNE 7, 1909.

REHEARING DENIED FRIDAY, SEPTEMBER 24, 1909.

THE defendant was convicted of the crime of forgery,
and appeals.—*Affirmed.*

*H. W. Byers,* Attorney-General, *Chas. W. Lyon,* Assis-
tant Attorney-General, and *Lawrence De Graff,* County
Attorney, for the State.

*D. T. Blodgett, pro se.*

LADD, J.—The indictment accused the defendant of
the false making of an order in words following: "No.
214.   $116.00.   April 12, 1906.   Treasurer of the School

1. CRIMINAL          Township of Douglas, County of Polk: One
LAW: forgery:.  year after date without interest pay to D. T.
intent:
evidence.        Blodgett, or order, the sum of one hundred
sixteen dollars from the contingent fund for Cyclopedias
in subdistrict No. ———.  By order of the board of direc-
tors.  Frank Berkey, President.  E. F. Mathis, Secretary."
The defendant was in the employment of the Holst Publish-
ing Company as a canvasser for the sale of encyclopedias
for the use of schools, and the above order was indorsed by
the defendant and delivered to B. P. Holst, manager of
that company, who credited him with the amount thereof
and issued to him a check on a bank for $63.  The defend-
ant, in his own behalf, testified to the false making of the

order, and explained: That it was done "at the request of
B. P. Holst. That the latter was owing him $600 or $800
for work. That he made this order because Mr. Holst
wanted it to keep as a memorandum between him and me,
as to how much money and books he has given me in pay-
ment for services performed. I made the warrant because
I didn't think he would use it for an illegitimate purpose.
My intention in making this instrument was that it should
be returned to me when certain events transpired. The
instrument was given to him to be kept until litigation that
was pending should be determined. Holst didn't want the
young lady working in the office to know anything about
the fact that he was paying me for making the resistance
to the opposition to the sale of his books and that he was
paying me for that, and wanted it to appear that he was
paying me for selling books, and I made the instrument so
that it would appear to be a good one, so that the young
lady there at the office would not know anything about it,
but that it was a good instrument. That is why there was an
attempt to imitate the signatures of the president and secre-
tary of this board. I never demanded any payment on this
order."

Cross-examination: "Mr. Holst made this request of
me to make the instrument at Luther, Iowa. I used a
pencil to write Frank Berkey's name, and used ink in simu-
lating the signature of E. F. Mathis, so that it would ap-
pear good to the young lady in the office. I never received
any school township warrant from Douglass township while
Berkey was president and Mathis secretary. I do not know
from what source I got the signature of Frank Berkey to
simulate his signature on this warrant. I think I had a
letter from Mr. Mathis, and I took that letter and laid it
over the school warrant and took a knitting needle and run
right over the signature, and then I traced that with ink.
I don't know how I got the signature of Frank Berkey in
pencil. I don't remember whether I had his signature, or

anything about that. I made his just the same as I did the other. I used indelible pencil in writing the name of Frank Berkey. I traced the line, yes. I did this about a day or two after Holst made the request. I had these blank warrants. I had a book of them. I inserted the word 'Douglas' on this warrant. The blank said 'the school township of ———.' I don't remember where I got the book of blanks. I next saw Holst at his home in Boone a few days afterwards, five or six, I think, after making this warrant. I intended first to send it to him by mail, but I presented it to him personally. I was at home in Des Moines, Iowa, when I made it. No one else was present when I gave this warrant to Mr. Holst at Boone, and no one else was present when he made the request."

Holst denied ever having made the request as testified to by defendant, and swore that he gave the check in the belief that the order was genuine and had no knowledge of the falsity of the instrument until payment was refused. His testimony was somewhat corroborated, and other testimony bearing thereon was adduced, so that the evidence was sufficient to carry the issue as to whether the making was with fraudulent intent to the jury.

II. Appellant urges that the indictment was insufficient, in that it does not allege authority of the officers of the school township to issue the order. The point raised is that as no resolution of the direc-

2. SAME: forgery: school order: indictment.

tors directing the issuance of the order was adopted, it necessarily was invalid. *Johnson v. School Corporation of Cedar,* 117 Iowa, 319. But it is not essential to constitute the offense that the false instrument would have been of legal efficacy if true. "If any person with intent to defraud falsely make . . . any instrument in writing, being, or purporting to be the act of another by which any pecuniary demand or obligation . . . is or purports to be created, . . . he shall be punished." Section 4853, Code. This purports to

be an order on the school treasurer issued by the officers authorized by law to execute the same, and is therefore within the language of the section from which we have quoted. It is enough that it is of apparent legal· efficacy. *State v. Van Auken,* 98 Iowa, 674; *State v. Sherwood,* 90 Iowa, 550; *People v. Munroe,* 100 Cal. 664, and cases collected in note to 24 L. R. A. 33. It was unnecessary to allege an intention to defraud any particular person (*State v. Maxwell,* 47 Iowa, 455), and it is not very material whether the design was to defraud the school township or the publishing company or Holst. See *People v. Bibby,* 91 Cal. 475 (27 Pac. 781); *Commonwealth v. Brown,* 147 Mass. 585 (18 N. E. 587, 1 L. R. A. 620, 9 Am. St. Rep., 736); *Gregory v. State,* 11 Ohio St. 329.

III. The indictment was returned June 30, 1908, and a few days later an application was presented to the judge, then presiding, praying for a change of venue on two grounds: (1) Prejudice of the inhabitants of the county, and (2) prejudice of the judge. This was denied but the court announced that a judge not residing in the county would preside at the trial. A. D. Pugh, Esq., was appointed to defend, and the cause set down for trial on September 28th following. At that time the accused first ascertained that Hon. W. G. Clements of Newton was on the bench and promptly amended the application for change of venue. Thereupon the defendant proceeded to examine his honor touching matters in the past and also testified. In this way it was made to appear: That the judge was not aware that he would preside at the trial until two days previous; that he had known the accused for twenty-five years; that while sitting on the district bench in Des Moines in 1907 he had overruled motions to dismiss three indictments charging defendant with having libeled some of the judges of the ninth judicial district, and before doing so examined the record; that subsequently defendant had written him a

3. CHANGE OF VENUE: discretion.

letter saying he did not wish him again to make any rulings in any action in which he might be interested; also, that defendant, who was one of the substituted plaintiffs in *Brown v. Zachary*, 102 Iowa, 433, had filed a petition for rehearing therein and a resistance to a motion to strike the same as scandalous, in each of which he had assailed Judge Clements with accusations of unprofessional conduct and as being unworthy of confidence as a witness. It appears that the judge was one of the attorneys for the defendants in that case and as a witness had disagreed with defendant concerning a conversation had between them.

Two things seem important in the administration of justice: (1) That every litigant have a fair trial; and (2) that this be made apparent to him from the rulings and procedure. Doubtless the accused, because of what he had said in the petition for rehearing in *Brown v. Zachary* and the resistance of the motion to strike the same and in his recent letter, believed that his honor had become prejudiced against him; but the court was not to base the ruling on his inclination or upon the belief of the accused or the proprieties of the situation, but according to the very truth, and, unless in doing so it can be said there was abuse of discretion, the ruling must be sustained. *State v. Billings,* 77 Iowa, 418; *State v. Foley,* 65 Iowa, 51; *State v. Hale,* 65 Iowa, 575; *State v. Ingalls,* 17 Iowa, 8.

The rulings on the motions did not furnish the slightest indication of ill-will. Nor can such effect be attributed to the letter written by defendant when disappointed over such rulings, though such letters may be in bad taste. This often happens, and no judge would think of harboring resentment because of such manifestation of one of the infirmities of human nature. Indeed few judges serve any considerable time without receiving communications expressing displeasure with decisions. The criticisms of ungracious losers are so common that they cannot be treated

as a basis for holding that a court is likely to be swerved thereby from a course of rectitude.

Nor do we regard what may have been inserted in a petition for rehearing or resistance to a motion to strike the same more than ten years prior to the trial as likely to have engendered lasting prejudice. It is not uncommon for both attorneys and litigants to become irritated and extreme, in their positions in the course of litigation. Few attorneys escape entirely the criticism of opposing litigants, and witnesses seldom do; but it does not follow that the unkind things said in the heat of argument are harbored during all the years thereafter and brooded over in the spirit of malevolence. They are but incidents in the course of litigation soon overlooked in the stress of other affairs, especially by attorneys who take up the controversy of others before the one is disposed of; and the statement of his honor that these matters had been overlooked long ago, and that he entertained no feeling against defendant, may well be accepted as true. If there were any doubt on the subject, it is removed upon examination of the record bearing unquestionable proof of the fairness and patience with which he presided at the trial. There was no error in denying the application for change of venue. What we have said disposes of the criticism of the judge first presiding for inviting Judge Clements to hear the cause, but, as he is not shown to have been aware of any objection to the latter, the criticism in any event was unfounded.

IV. The defendant interposed the plea that he had been indicted for uttering the identical instrument in Boone County, tried on said charge, and acquitted, and that this constituted an acquittal of the offense of

4. CRIMINAL LAW: forgery: uttering forged instrument: former jeopardy.

forging the same writing. A certified copy of the record of the proceedings in Boone County was attached to the plea, and its sufficiency as a bar to the prosecution was raised by a demurrer

filed by the State. The demurrer was sustained, and the defendant was not allowed to introduce evidence tending to support the same or to go to the jury on the issue. There being no question as to identity of defendant as the person accused in both trials, nor as to the identity of the transactions, the issue was purely of law and rightly determined by the court. *State v. Jamison,* 104 Iowa, 343; *Hooper v. State,* 30 Texas App., 412 (17 S. W. 1066, 28 Am. St. Rep., 926); *Gunter v. State,* 111 Ala. 23 (20 South. 632, 56 Am. St. Rep. 17); *State v. Williams,* 152 Mo. 115 (53 S. W. 424, 75 Am. St. Rep. 441). Was it rightly decided? That the offenses of forgery and of uttering a forged instrument are distinct offenses appears from *State v. McCormack,* 56 Iowa, 585 (9 N. W. 916).

And the crime of forgery is not a degree of that of uttering. *State v. Bigelow,* 101 Iowa, 430. It is not necessarily included therein, for one who utters need not be shown to have forged the instrument uttered; but, to convict one of having uttered a false and forged instrument, an essential element of the proof is that it is in fact a forgery, or of such a character that, if made with fraudulent intent, the maker would be guilty of forgery. 2 Bishop, N. Cr. L. section 605. But the fraudulent intent in the false making, though essential to constitute the crime of forgery, need not be proven to establish the crime of uttering. This appears from the statutory definition of the latter offense. Section 4854 of the Code declares that, "if any person utter and publish as true . . . any instrument in writing mentioned in the preceding section (that defining forgery) knowing the same to be false, altered, forged or counterfeited with intent to defraud," he shall be punished accordingly. If the writing is of the kind enumerated in the preceding section, and is false, it is sufficient as an instrument with which to commit the offense of uttering and publishing as true, and to establish

the latter offense it is not essential to prove by whom it was made or with what intent.

Manifestly, then, acquittal of the crime of uttering and publishing as true does not involve a finding that the instrument alleged to have been passed was forged, and this is the conclusion reached by courts generally. In *Beyerline v. State,* 147 Ind. 125 (45 N. E. 772) the accused was acquitted on an indictment for uttering in which he was alleged to have made the instrument, and the court held that this was not a bar to prosecution for the crime of forgery, saying: "Neither is it correct to say that the proof to sustain one charge is the same as would be required to support the other. It is true that it is stated, in the information set out in the plea, 'that the names of the said George Beyerline and Jacob Schapvenacker were false and forged by the said Fred Beyerline'; but that is by way of recital, and not as a charge, the words being simply descriptive of the signatures to the note. Surely if such statement and description had been made, showing that the names had been forged by another person named, it would not be contended by counsel that such other person would thereby be sufficiently charged with the crime of forgery." In Missouri a statute prohibits a trial of "any offense necessarily included" in an indictment on which the accused has been acquitted or convicted, and in *State v. Williams, supra,* the defendant interposed as a plea in bar to a prosecution for forgery an acquittal of having uttered the same instrument, and the court held that forgery was not an included offense, and, as proof of forgery by some one else would have sufficed in the charge of uttering, forgery by the accused was not necessarily included in uttering, and for these reasons the plea was overruled. In *Preston v. State,* 40 Tex. Cr. App. 72 (48 S. W. 581), a former acquittal of the charge of forging the identical instrument was held not to be a bar to prosecution for uttering on the ground that the two

5. SAME.

are distinct offenses, and a like ruling was made in *Hooper v. State,* 30 Tex. App. 412 (17 S. W. 1066, 28 Am. St. Rep. 926). In *Harrison v. State,* 36 Ala. 248, a former acquittal of the charge of having forged the instrument alleged to have been passed was held not to be a bar to the prosecution, as it did not appear that "the facts alleged in this, the second indictment, if proven to be true, would have warranted a conviction of the first indictment." See, also, *Ball v. State,* 48 Ark. 94 (2 S. W. 462); *State v. Moore,* 86 Minn. 422 (90 N. W. 787, 61 L. R. A. 819), cited by appellant, is not in point.

As indicated in the Indiana case, the reference to the instrument alleged to have been passed in an indictment for uttering as false, forged and the like is descriptive characterizing the means employed to perpetrate the crime. No allegation that the accused made the false instrument or, if he did, that this was done with fraudulent purpose, is essential, and upon conviction or acquittal of the charge the question as to whether the instrument in fact was forged remains open. Section 5405 of the Code provides that "the jury must render a general verdict of 'guilty' or 'not guilty' which imports a conviction or acquittal of every material allegation of the indictment." Manifestly this has reference to acts or omissions of which the accused is charged. Otherwise there might be a conviction or acquittal of matters for which the accused might not have been responsible at all. Neither in the accusation nor trial for the fraudulent uttering is the responsibility of the accused for the falsity of the instrument involved, and it would be preposterous to say that, though not charged with the false making, a verdict of not guilty would constitute an acquittal thereof. In many of the decisions it is said that the most infallible test by which to determine whether a former judgment is a bar or not is to inquire whether the same evidence will support both the present and the former prosecution. In *State v. Waterman,* 87 Iowa,

255, both indictments charged the obstruction of a highway and acquittal on the first was on the ground that there was no highway to be obstructed, and this was held to bar the second prosecution. In *State v. Ingalls,* 98 Iowa, 728, an acquittal on an indictment for larceny was held not to operate as a bar to a prosecution for breaking and entering, part of the same transaction when the larceny was committed. In *State v. White,* 123 Iowa, 425, an acquittal of the charge of keeping a gambling house was adjudged no bar to a prosecution for gambling. In *State v. Stone,* 75 Iowa, 215, an acquittal of uttering and publishing as true a certain false and forged note and chattel mortgage was held good as a plea in bar to a prosecution for obtaining money by false pretenses in the same transaction, for in each indictment the essential element of charge was the representation of the false instrument as genuine. In *State v. Price,* 127 Iowa, 301, an acquittal of the crime of rape on a child under fifteen years of age was held to bar a prosecution for incest alleged to have been committed within the period covered by the charge of rape. See *State v. Webber,* 76 Iowa, 686. In *State v. Caywood,* 96 Iowa, 367, a judgment of acquittal in a larceny case was held not to be an adjudication of the truthfulness of the defendant's denial of guilt in the sense that it would bar a prosecution of perjury. In *State v. Mikesell,* 70 Iowa, 176, the accused had been acquitted of the crime of larceny from a house in the nighttime, and this was adjudged to bar a prosecution based on the same transaction for the crime of robbery on the ground that larceny is an essential element of both offenses. An acquittal of manslaughter is held to be a bar to a prosecution for murder, for that the allegation of unlawful killing of which there has been an acquittal is an essential element of both offenses and has been once adjudicated. *Scott v. U. S.,* Morris (Iowa), 142. As affirming the same principle as applied to other crimes, see *State v. Gleason,* 56

Iowa, 203, and *State v. Murray,* 55 Iowa, 530.   In *State v. Foster,* 33 Iowa, 525, a conviction of assault and battery was held not to bar a prosecution for assault with intent to commit a great bodily injury.   It will be observed upon examining these and other authorities that until the case at bar no one had ever thought of interposing an acquittal of an offense alleging no act or omission of the accused constituting the crime in the indictment as a bar to the prosecution of the latter, and no case can be found in the books lending support to such a doctrine.   It is unsound.   All the decisions are the other way.   The ruling on the demurrer was correct.

V.   Appellant also contends that he has been denied the equal protection of the law.   This, as we understand the brief, is based on the assumption that the judges before whom he was tried were prejudiced.   If so, the proposition has been disposed of by what has already been said.   In the course of his brief, the suggestion also is made that reliance is placed on other errors we are expected to discover in going through the transcript of evidence on file.   Section 5462 of the Code does require the Supreme Court to "examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties and render such judgment on the record as the law demands."   The record meant is that upon which the cause is submitted.   This may be on transcript of all papers in the case on file save those returned by a committing magistrate and all entries in the record book.   Section 5450, Code.   This does not include the evidence.   *Harriman v. State,* 2 G. Greene, 271.   See *State v. McGlasson,* 86 Iowa, 47.   Or the appeal may be presented, as appellant elected to submit this, on printed abstracts and arguments as provided by the rules of this court.   Section 5461, Code.   In the latter event, the abstracts constitute the record referred to and are presumed to contain everything essential to the

6. CRIMINAL LAW: review on appeal: what constitutes the record.

determination of all points raised in argument. Questions not raised in the printed argument are deemed to have been waived. Because of appellant's reliance on a different construction of these statutes, however, we have examined the transcript of evidence with care and discover no error in any ruling adverse to defendant.—*Affirmed.*

WEAVER, J.—I dissent from the argument and conclusion reached in the fourth paragraph of the foregoing opinion.