STATE of Iowa, Appellee,

v.

Harvey Lyle ENTSMINGER, Appellant.

No. 52982.

Supreme Court of Iowa.

July 18, 1968.

John P. Roehrick, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David A. A. Elderkin, Asst. Atty. Gen., and Ray A. Fenton, County Atty., Des Moines, for appellee.

MASON, Justice.

This is an appeal from judgment following a jury verdict convicting defendant Harvey Lyle Entsminger of uttering a forged instrument contrary to section 718.-2, Code, 1962, 1966.

Questions in the case are whether (1) private handwritten papers seized from de-

fendant during a "booking" procedure were seized and searched illegally contrary to Amendments 4 and 14 of the United States Constitution; (2) the State's use of these papers at defendant's trial compelled him to be a witness against himself in contravention of Amendments 5 and 14; and (3) there was a material and fatal variance between the allegations of the county attorney's information and the proof.

A notice of appeal to this court was filed November 27, 1964. However, no notice that defendant desired to submit his case upon a printed abstract of record, brief and argument was served or filed nor was any printed abstract of the record filed or served as required by our Court Rule 16 as then in effect. As a consequence, the matter was submitted on a "clerk's transcript" March 8, 1965. Three days later this submission was set aside by an order directing that defendant be permitted to proceed with the appeal on a printed abstract and a brief on the merits. When nothing was filed by defendant's counsel by September 21, rather than to dismiss the appeal, the matter was again submitted on "clerk's transcript" and a per curiam opinion affirming defendant's conviction was filed October 19. State v. Entsminger, Iowa, 137 N.W.2d 381.

June 20, 1966, certiorari to this court was granted by the United States Supreme Court. May 8, 1967, the Supreme Court reversed this court and remanded the case for another appeal "with a full printed abstract of the record, briefs and oral argument." Entsminger v. State of Iowa, Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501. September 18 an order directed that the new appeal be submitted to this court at the earliest opportunity.

The matter is now before us after oral arguments on a complete transcript in lieu of printed record with printed brief and argument prepared by defendant's court-appointed counsel.

I. Des Moines police were looking for defendant in connection with bad checks

being passed throughout the city. Detective Marohn testified that although he did not have a warrant for defendant's arrest, he had been looking for him on June 12, 1964, relative to the check involved. The same day while defendant was driving his car, he was arrested for a traffic violation and taken to the police station. The following morning while Marohn was talking to defendant at the city jail, Entsminger said he had been drinking and had passed several checks in the city.

Defendant testified the arresting officers told him at the scene he was being arrested for forgery. In fact sometime after his conversation with defendant at the city jail Detective Marohn filed a forgery charge against him on a check other than the one involved here. When defendant was unable to furnish bond on the forgery charge, he was transferred to the Polk County jail. That charge was dismissed at preliminary hearing held sometime between June 13 and 29—the record does not disclose the exact date. Following this a charge of uttering a forged instrument based on the check here was filed by Marohn.

While defendant was being "booked" on the instant charge in the municipal court building jail June 29 three handwritten documents were taken from his pocket in an inventory process. When questioned by Lieutenant Dawson of the identification bureau, defendant stated he had written the various documents. They were then placed in a "booking envelope" and deposited in a safe. When Dawson requested defendant give handwriting samples, he refused. The officer then had the jailer remove the exhibits from the safe and later used them for comparison with the handwriting on the State's exhibit "A", a check, upon which the present charge is based.

September 14 a county attorney's information was filed charging defendant with uttering a forged instrument. At arraignment he entered a plea of not guilty and was thereafter tried, convicted and sentenced to the state penitentiary for a period not to exceed 10 years.

II. Defendant's contention under his first assignment of error raises the first question, supra. He asserts the admission in evidence for handwriting comparison purposes of the three documents taken from him at the "booking" process, exhibits "I", "J" and "K" at trial, violated his constitutional rights under Amendments 4 and 14 as they were obtained by an illegal search and seizure.

He admits some writing on exhibit "I", consisting of six handwritten sheets of lined paper and some on exhibit "J", consisting of two additional handwritten sheets, are his. He describes the papers as three sets of legal documents he was going to file in court that day. His complaint is limited to the manner in which police acquired possession of the documents.

No motion was made before trial to suppress the evidence nor did defendant at any time during trial request a hearing on whether the exhibits and testimony relative thereto were inadmissible under Amendments 4 and 14.

■ It is defense counsel's job, not the court's, to raise the question of unlawful search and seizure. Kuhl v. United States (9 Cir.), 370 F.2d 20, 26.

During the direct examination of Dawson when the witness was asked if he had made a comparison between exhibits "I", "J" and "K" and the signature on exhibit "D", a fingerprint card signed by Entsminger in the witness' presence, defendant for the first time objected there had been no showing the evidence was legally obtained; that he felt it should not be commented upon. The objection was overruled. Later when the fingerprint card was offered in evidence defendant's only objection was "no proper foundation laid." The same objection was made to the offer of enlarged photographs of exhibits "I" and "J" and renewed to the offer of exhibits "I" and "J". Exhibit "K" was not offered.

■■ Of course, reversible error may not be predicated upon this general objec-

tion that no proper foundation had been laid for admission of these exhibits. A party objecting to the offer of evidence for this reason must point out in what particular or particulars the foundation is deficient so the adversary may have an opportunity to remedy the alleged defect, if possible. See Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1263, 30 N. W.2d 97, 103; Frederick v. Shorman, 259 Iowa 1050, 1060–1061, 147 N.W.2d 478, 485; In Re Estate of Ronfeldt, Iowa, 152 N.W.2d 837, 846; and McCormick on Evidence, section 52.

■ Although we think defendant's objection "there had been no showing the evidence was legally obtained" is insufficient to raise the question on appeal, because of its importance to the law enforcing agencies of this state, we prefer to decide the first question presented on its merits.

■ The inventorying process conducted at the city jail June 29 can hardly be justified under the traditional concept of being incidental to the arrest of June 12. The legality of the seizure of the documents rests upon the reasonableness thereof. "For 'what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.' Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960)." Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, decided June 10, 1968. The purpose of Amendment 4 is not to prevent all searches—only unreasonable searches and seizures. State v. Hagen, 258 Iowa 196, 204, 137 N.W.2d 895, 899; State v. Polton, 259 Iowa 435, 442, 143 N.W.2d 307, 311; State v. Brant, 260 Iowa 758, 150 N.W.2d 621, 625, and citations in these opinions. The seizure, as well as the search, must not be unreasonable. State v. Raymond, 258 Iowa 1339, 1347, 142 N.W.2d 444, 449.

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'un-

reasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case." United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653. See also State v. Raymond, supra.

"[T]here is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' Camara v. Municipal Court, 387 U. S. 523, 534, 536–537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967)." Terry v. State of Ohio, supra.

The question is whether in all the circumstances of this "booking" process defendant's right to personal security was violated by an unreasonable search and seizure.

■ As stated, police were looking for defendant as a result of bad checks being passed throughout the city, Detective Marohn had been looking for him on June 12 with respect to the check involved. After the forgery charge upon which Entsminger had originally been arrested was dismissed, he was returned to the city jail from the county jail to be taken into custody and "booked" on this uttering charge. During the course of this process exhibits "I" and "J" were taken from him, apparently in accordance with a police department custom to inventory the personal effects kept for safekeeping by the police for one legally held in jail. In their endeavor to fulfill the duty owed to take and care for the property of these persons it was proper for the police to require Entsminger to turn over to them at this stage property, including papers, he had on his person.

This is standard and necessary under modern police practice which calls for a thorough search at the station house of any person who is taken into custody. Such searches are not unreasonable; they are an integral part of efficient police pro-

cedure. See Charles v. United States (9 Cir.), 278 F.2d 386, 389, footnote 2. These circumstances rendered initiation of the search and seizure permissible to the extent used here. The scope of this search was strictly tied to and justified by this "booking" procedure. Warden v. Hayden, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652, 18 L.E.2d 782. It was not of such intolerable intensity as to be unreasonable. Terry v. Ohio, supra.

The papers in question were observed at the time they were inventoried for safekeeping "and if perchance any of the property so taken in itself or considered with other circumstances bore some evidence of defendants' guilt, this was their misfortune." State v. Hassan, 149 Iowa 518, 524, 128 N.W. 960, 963. As tending to support this position see Baskerville v. United States (10 Cir.), 227 F.2d 454, 456; Cotton v. United States (9 Cir.), 371 F.2d 385, 392; and State v. Stevens, 26 Wis.2d 451, 132 N.W.2d 502, 507.

The issue is not the abstract propriety of the police conduct, but the admissibility against defendant of the evidence uncovered by the search and seizure.

In Baker v. State, Fla., 202 So.2d 563, 567, defendant contended interception and copying by the jailer of a letter written by defendant to an uncle was an invasion of accused's right of privacy and an illegal seizure. In rejecting this contention the Court said:

"The jailer to whom the letter was given for mailing, read it as a standard security measure practiced to insure the internal stability of the jail. Thus, the letter came into possession of the state in the orderly process of the operation of the jail. * *

The use of admissions in letters written by prison inmates has been held proper by the United States Supreme Court. Stroud v. United States, 251 U.S. 15, [21–22] 40 S.Ct. 50, 64 L.Ed. 103, [111] (1919)."

In Stroud, the government offered in evidence certain letters written by defendant while a penitentiary inmate. These letters containing expressions tending to establish his guilt of homicide were voluntarily written and under prison practice and discipline were turned over to the warden, who furnished them to the district attorney. In rejecting defendant's contention their seizure was illegal, the Court said:

"They came into the possession of the officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution. Under such circumstances there was neither testimony required of the accused, nor unreasonable search and seizure in violation of his constitutional rights."

Stroud is still the law. See Hayes v. United States (10 Cir. 1967), 367 F.2d 216, 222.

No unreasonable search or seizure was shown nor was defendant deprived of any constitutional right now asserted. The documents were properly admitted into evidence for the limited purpose permitted by the court, infra.

III. Defendant asserts in support of his second assignment that admitting exhibits "I" and "J" into evidence for handwriting comparison purposes also violated his privilege against self-incrimination under Amendments 5 and 14 of the federal constitution.

Before passing on the merits of this contention, it should be pointed out the court in admitting exhibit "I" limited it to handwriting analysis for comparison purposes and the contents of the exhibit as such were not evidence and not to be regarded by the jury as any part of the record. The State in offering exhibit "J" limited its offer solely for comparison purposes between the writing therein and the handwriting and endorsement on State's exhibit "A". The court placed a similar limitation on use of exhibit "J".

A somewhat similar contention was rejected in State v. Sefcheck, Iowa, 157 N. W.2d 128, 135, where we said:

"* * * The constitutional safeguards upon which defendant relies do not extend to non-testimonial evidence. The privilege against self-incrimination, both under federal and state rules, is limited to evidence by *communication* in whatever form that communication might take. It does not protect a defendant, by the taking of blood or other bodily fluid, by the use of fingerprints, or by the showing some physical trait or characteristic, from becoming the source of real or physical evidence against himself. Schmerber v. State of California, 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826. This rule was applied to voice identification in a lineup in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149. It was also applied to handwriting exemplars in Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178."

■ Taking of exemplars of defendant's handwriting, containing no testimonial or communicative matter does not violate a defendant's Fifth Amendment privilege against self-incrimination.

"The privilege reaches only a compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers,' and not 'compulsion which makes a suspect or accused the source of "real or physical evidence" * * *.' Schmerber v. State of California, 384 U.S. 757, 763–764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. *A mere handwriting exemplar, in contrast to the content of what is written,* like the voice or body itself, is an identifying physical characteristic outside its protection. United States v. Wade, supra, 388 U.S., at 222–223, 87 S.Ct., at 1929–1930. No claim is made that the content of the exemplars was testimonial or communicative matter. Cf. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746." (Emphasis supplied). Gilbert v. State of California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178.

We do not agree with defendant that Gilbert v. State of California, supra, is not in point.

■ Defendant does not contend his authentication of the handwriting in exhibits "I" and "J" when questioned by Lieutenant Dawson was not voluntary. The Miranda warnings were not required in the circumstances here. Schmerber v. State of California, 384 U.S. 757, 766, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908. However, he still argues he was on the "horns of the dilemma." If, on the one hand, he denied ownership of the papers, he would have no standing to object to Dawson's use of them for handwriting comparison purposes and could lose their possession. On the other side, if he admitted ownership he would incriminate himself since the State would introduce into evidence his conversation with Dawson in order to satisfy the requirements of Code section 622.25 as to genuineness.

■ He contends he had no choice, this was coercion put in motion by efforts of the police in their intent to seize his papers. Defendant's argument he should be protected from thus incriminating himself because he feared loss of the papers loses much of its force when it is recalled that when told the police were going to hold the papers for evidence, he said it would be all right, he would write some more the next day.

Defendant's contentions are without merit.

■ IV. Defendant contends the fact the information charged him with uttering

**486**

a forged instrument alleged to have been drawn on the account of "Ron Woods" in the Capital City State Bank, whereas the evidence offered showed it was not a check of the State's witness, Ronald E. Woods, constituted a material and fatal variance.

An assistant cashier of the Capital City State Bank testified he had searched the bank records and determined that on May 29, 1964, the bank did not have an account in the name of "Ron Woods"; it did have an account with "Ronald E. Woods"; he had personally checked the signature on exhibit "A" and it did not compare with the signature of Ronald E. Woods on file. Ronald E. Woods testified that on May 29 he had a checking account with the Capital City State Bank, the signature on exhibit "A" was not his, he did not know the defendant on May 29 and neither Entsminger nor anyone else had Woods' permission to sign his name to the check.

Defendant argues that allegations of uttering a check forged on "Ron Woods" are not supported by proof of uttering a check of Ronald E. Woods.

The check in question, exhibit "A", was made payable to "H. P. Entsminger", drawn on Capital City State Bank and purports to be the check of "Ron Woods".

If there is a variance, it is not such as might mislead the defense, or expose the accused to the danger of being put twice in jeopardy, and therefore, under modern practice, it is not considered material. Kokenes v. State, 213 Ind. 476, 13 N.E.2d 524, 531, and citations; 42 C.J.S. Indictments and Informations § 265, p. 1289.

We have said an allegation in an indictment for assault with intent to commit rape naming the injured party as May for Mary was not a fatal variance, State v. Emeigh, 18 Iowa 122, 124; that where an indictment for bigamy charged the second marriage to have been with one Jane Jaco while the proof showed her name was Jane Frances Jaco there was not a fatal variance, State v. Williams, 20 Iowa 98, 100; and where on trial under an indictment for resisting an arrest by an officer named Patrick Ryan and proof showed his name was Patrick Ryder there was not a fatal variance, State v. Flynn, 42 Iowa 164, 165.

Defendant further contends it was necessary to show the check was in fact a forgery; that showing it was a forgery on the account of Ronald E. Woods was not sufficient to prove the crime charged against defendant. We do not agree.

An essential element of uttering a false or forged instrument is that it is in fact a forgery, or of such a character that, if made with fraudulent intent, the maker would be guilty of forgery. Of course one who utters need not have forged the instrument uttered. State v. Blodgett, 143 Iowa 578, 121 N.W. 685, 688.

As previously noted, Ronald E. Woods was the only person having an account with the bank who might have signed exhibit "A" with the name "Ron Woods". He testified the signature was not his nor was it authorized.

"It is well settled in most jurisdictions, including Iowa, that the offense of 'forgery' may be committed even though the name used be an *assumed* or fictitious one when it is also shown that it was used with intention to defraud. [Citation of authority]

"To constitute forgery, the name alleged to be forged need not be that of any person in existence. It may be wholly fictitious, if the instrument is made or altered with intent to defraud. * * *" (Citing authorities). State v. Gruver, 260 Iowa 131, 148 N.W.2d 405, 408.

The variance in names was neither fatal nor material. Defendant's contention under this assignment is without merit.

V. We remind that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure and that in

most instances failure to comply with the warrant requirement can only be excused by exigent circumstances. Terry v. Ohio, supra, and authorities cited.

Finding no error, the case is

Affirmed.

All Justices concur.