[Crim. No. 3295.   Fourth Dist., Div. One.   Apr. 11, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY IRVIN FORD, Defendant and Appellant.

James E. O'Neal, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jimmie E. Tinsley, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Henry Irvin Ford appeals from a judgment convicting him, after court trial, of possessing marijuana for sale (Health & Saf. Code, § 11530.5), and transporting marijuana (Health & Saf. Code, § 11531).

Ford contends the marijuana evidence leading to his arrest and conviction was discovered during an illegal, warrantless search of an automobile he had borrowed. He also claims the evidence was insufficient to show he knew the marijuana was in the car, or to show he had sole and exclusive control of the car when it was searched and for six days before the search.

On January 18, 1968, David Fuentes, a state narcotics agent, learned an old model Packard sedan with compartments built into its fender wells was being used regularly to smuggle narcotics into the United States from Mexico. On February 12, 1968, Fuentes learned an old Packard had been impounded by the California Highway Patrol somewhere in Oceanside on February 7, 1968. Fuentes went to the garage where the car was impounded; noticed both front fenders showed signs of paint or damage repair; looked under the fender area; smelled an odor of marijuana coming from both front fenders; saw panels had been welded or attached to the front fender wells; and saw the corner of what appeared to be a red kilo brick package which he suspected contained marijuana.

Fuentes attempted to enlist the aid of the sheriff's department to obtain a search warrant. He was unable to locate the two deputy sheriffs working in the Oceanside area. He tried to contact the deputy district attorney in charge of the Oceanside office but he was out for the day. Fuentes called two of the San Diego based deputy district attorneys, but was unable to contact them. February 12 was Lincoln's birthday, a court holiday.

Finally, Fuentes contacted the Highway Patrol office which sent Sgt. McDaniels and Officer Steriagle to assist him. Sergeant McDaniels said the car had been impounded February 7, 1968, when its driver, defendant Ford, was arrested for traffic violations. Ford was scheduled to appear in court Feb-

ruary 13, but had been released from custody pending the hearing.

Fuentes and the patrol officers removed the headlights of the Packard and found 50 kilo bricks of marijuana in the fender wells.

On February 7, 1968, a Highway Patrol officer had stopped Ford, driving the Packard with defective tail lights. Ford did not have a driver's license and the car was not registered in California. The license plates on the Packard belonged to a 1966 Volvo. Ford first said Robert Smith owned the car, then, later, said Jim Roberts owned it.

Ford testified he had met Jim Roberts in a card room on Fourth Avenue in San Diego. Ford told Roberts he wanted to visit Ford's brother in Hollywood. Roberts told Ford he could borrow one of his two cars; Roberts would park it in front of Ford's hotel with the keys in it; Ford was to park the car on Fourth Avenue with the keys in it when he returned and Roberts would retrieve it. Ford did not know where Roberts lived or his occupation. Ford told Roberts he would be gone a day or two. He did not tell Roberts his brother's address. Ford had met Roberts about two weeks before he borrowed the car and had seen him only a ''couple of times'' after that, presumably including the occasion Roberts agreed to loan him the car.

Ford contends the search of the Packard was too remote from the time and place of his arrest to be treated as incidental to his arrest, thus making the search without a warrant illegal, citing *People* v. *Burke*, 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67]. Ford relies also on *Preston* v. *United States*, 376 U.S. 364, 368 [11 L.Ed.2d 777, 781, 84 S.Ct. 881, 884], where the court held a search of a car impounded by the police after its occupants were arrested and placed in custody was not a reasonable search without a warrant and was too remote in time to be incidental to the occupants' arrests.

Neither *Burke* nor *Preston* are in point here, where the search was in no way connected with Ford's arrest for traffic violations; was not incident to any of the purposes for which the car was impounded; was not conducted by the arresting and impounding law enforcement agency but by a different agency; and where Ford was not in custody and the true owner of the impounded car was neither in custody nor known. The Packard was located at Carpenter's garage in an open area toward a small alley or driveway leading to a street

and its keys were in the car. The Packard's illegal license plates had been removed by the Highway Patrol.

The rule applicable here is the police may search a motor vehicle when they have reasonable cause to believe it contains contraband. (*Dyke* v. *Taylor Implement Mfg. Co.*, 391 U.S. 216 [20 L.Ed.2d 538, 88 S.Ct. 1472]; *Carroll* v. *United States*, 267 U.S. 132, 149 [69 L.Ed. 543, 549, 39 A.L.R. 790, 45 S.Ct. 280, 283-284]; *People* v. *Madero*, 264 Cal.App. 2d 107, 111 [70 Cal.Rptr. 159].) Agent Fuentes had a reasonable belief narcotics were hidden in the Packard, based on the information a car matching its description was used for smuggling narcotics across the Mexican border in compartments built into the car's fender wells. This information was corroborated when, after Fuentes located the car, he observed signs of body work on the front fenders, detected an odor of marijuana, saw panels welded into the fender wells and observed the corner of a red kilo brick package.

Does the circumstance of the car being in Highway Patrol impound make unreasonable a search of the car which otherwise would be reasonable when based on probable cause to believe contraband was in it? Certainly not. Probable cause to believe this car contained marijuana did not arise until Agent Fuentes learned it was impounded and matched the description of a smuggling vehicle. Agent Fuentes had no control over the car. Ford, its driver, was not in custody, the owner was unknown and presumably at large. The car itself was not stored in a secure manner. The significance of the Highway Patrol impound is it lends some weight to a contention Fuentes might have had time to secure a search warrant before he removed the marijuana. Not only did Fuentes make diligent yet unsuccessful attempts to get a search warrant, but the availability of a search warrant is irrelevant. The true test is reasonableness of the search. (*Cooper* v. *California*, 386 U.S. 58, 62 [17 L.Ed.2d 730, 733, 87 S.Ct. 788, 791].)

The trial court's conclusion Fuentes' search was reasonable under exigent circumstances is supported by substantial evidence. Fuentes had probable cause to believe the car contained contraband, evidence of which might be destroyed or disappear, and he had made reasonable efforts to get a search warrant.

Substantial evidence also supports the trial court's conclusion Ford knew the marijuana was in the Packard. Such knowledge may be established by circumstantial evidence. (*People* v. *Miller*, 176 Cal.App.2d 571, 577 [1 Cal.Rptr.

656].) It is unlikely the true owner of a car would entrust it to a stranger for a trip to an unknown address in Hollywood when, unknown to the stranger, the car was loaded with a large amount of concealed marijuana. (See *People* v. *Upton,* 257 Cal.App.2d 677, 685 [65 Cal.Rptr. 103].)

The knowledge element of narcotics possession has often been held sufficiently supplied by contradictory statements and explanations by defendants. (*People* v. *Baltazar,* 159 Cal. App.2d 595, 598 [323 P.2d 1062] ; see *People* v. *Redrick,* 55 Cal.2d 282, 288 [10 Cal.Rptr. 823, 359 P.2d 255].) Ford's equivocation concerning the Packard's true owner and his implausible explanation of how he borrowed it and was to return it could be taken as a fabrication calculated to prevent detection of the car's true owner. The court could reasonably infer Ford was hiding his ownership of the unregistered Packard or attempting to protect the person who did own it. Such deception raises a reasonable inference Ford had guilty knowledge of the bulk marijuana concealed in the car.

Ford's contention the evidence fails because it does not show he had sole and exclusive control of the Packard after his arrest for some six days until it was searched goes to the weight of the evidence. The trial court could reasonably find a car in police impound for six days would be in essentially the same condition at the end of that period as when impounded.

Judgment affirmed.

Coughlin, J., and Whelan, J., concurred.