445 F.2d 974
 UNITED STATES of America, Plaintiff-Appellee,
v.
James Edward MILES et al., Defendants-Appellants.
No. 30192 Summary Calendar.*
*(1) Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir. 1970,
431 F.2d 409, PartI.
 United States Court of Appeals, Fifth Circuit.
 June 2, 1971.
Rehearing Denied June 29, 1971.
 
 Fred A. Semaan, Oscar C. Gonzalez, San Antonio, Tex., for defendant-appellant Arthur Harry Eckert.
 James R. Gillespie, San Antonio, Tex., for defendant-appellant James Edward Miles. T. P. Henley, San Antonio, Tex., for defendant-appellant Joe Felix Zamorra.
 Harry A. Nass, Jr., San Antonio, Tex., for defendants-appellants.
 Seagal V. Whetley, U.S. Atty., Reese L. Harrison, Jr., Asst. U.S. Atty., Chief, Crim. Div., Western Dist. of Texas, San Antonio, Tex., for plaintiff-appellee.
 Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.
 WISDOM, Circuit Judges:
 
 
 1
 Arthur Harry Eckert, James Edward Miles, and Joe Felix Zamorra were charged in a two-count with violating the federal statutes relating to barbiturates and amphetamines.[1] The three defendants pleaded not guilty, waived trial by jury, and went to trial before the district court. The court found Miles and Eckert not guilty on Count I, but guilty on Count II. The court found Zamorra guilty on both counts. Miles was sentenced to serve a one-year term in the custody of the Attorney General. Eckert was sentenced to serve a one-year term and was fined $1,000. Zamorra was sentenced to serve concurrent terms of five years and one year and was fined $1,000. All three defendants have appealed.
 
 I.
 
 2
 The three defendants argue that the district court erred in admitting into evidence the pills found in Zamorra's car on the ground that the police officers' search of the car was made without a valid warrant and therefore in violation of the Fourth Amendment. We cannot agree.
 
 
 3
 The Supreme Court has long held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search of a house or an office. Indeed, under the Carroll[2] doctrine police officers may search without a warrant any automobile that they have probable cause to believe contains contraband. Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; United States v. Hill, 5 Cir. 1971, 442 F.2d 259. Our task in this case is to examine the record to see whether at the moment the police officers searched Zamorra's car they had probable cause to believe that the car contained illegal merchandise.
 
 
 4
 On May 7, 1969, Charles Butler of the San Antonio Police Department received word from an informer that the defendant Zamorra had in his possession a large quantity of barbiturates and was scheduled to meet that night a Negro known as 'Mop' near the corner of Hedges and Vargas streets in San Antonio to transact a sale. The informer had previously informed Butler that Zamorra had been selling amphetamine and barbiturate tablets and capsules in commercial quantity. Butler had known the informer for several months and on similar occasions in the past the informer had furnished him information that turned out upon investigation to be true.
 
 
 5
 Butler proceeded to the 100 block of Vargas Street where he found parked in the dark an automobile that he knew to be Zamorra's. He flashed a light in the car and recognized Zamorra behind the steering wheel and Eckert in the back seat. He also saw sitting in the front seat a Negro man, later identified as Miles. He watched Eckert hand Miles a brown sack, which Miles dropped out the side-window of the car. Butler then redioed for help and got out of his car to investigate. He went up to Zamorra's car and found a brown paper sack on the ground. Inside the sack he saw several packages of red capsules wrapped in cellophane. At that time three other police officers arrived on the scene. The officers arrested the three defendants. It was then that they searched Zamorra's car. Underneath the back seat the officers discovered a large quantity of amphetamines and barbiturates.
 
 
 6
 On this evidence we hold that at the moment the police officers searched Zamorra's car they had probable cause to believe that the car contained illegal drugs.[3] It follows then that the district court did not err in denying the defendants' motion to suppress on the ground that the evidence was obtained in violation of the Fourth Amendment.
 
 II.
 
 7
 Eckert argues that the district court erred by continually refusing to permit his co-defendant Miles to testify.
 
 
 8
 At the trial Eckert testified that on the night in question he was riding in his car with Arnold McCoy. They spotted Zamorra's car parked on Vargas Street. McCoy wanted to speak to Zamorra. Eckert stopped his car behind Zamorra's and McCoy got out. McCoy soon returned and said that Miles wanted to speak to Eckert. Eckert then got into Zamorra's car, where Officer Butler later found him. Eckert testified that while in Zamorra's car he never handed any sack to Miles. Eckert argues that had Miles been permitted to testify he would have corroborated Eckert's testimony.
 
 
 9
 The first time the matter arose during the trial the district court would not allow Miles to testify because he had been adjudged incompetent. Eckert now argues, however, that one who has been found incompetent to stand trial may nevertheless be a competent witness and that the court erred in refusing to permit Miles to testify at that point. Miles was later adjudged competent to stand trial and in fact went to trial before the court and was found guilty. At that time Eckert again asked the court to permit Miles to testify that Eckert had not handed him the brown paper sack. This time the court denied the request saying, 'I wouldn't believe Miles under a stack of Bibles on that question.' The following colloquy then occurred between Eckert's counsel and the trial judge:
 
 
 10
 MR. SEMANN: But Your Honor, the Appellate Court might.
 
 
 11
 THE COURT: Well, I'm the trier of the facts.
 
 The trial judge then commented as follows:
 
 12
 Well, the Appellate Court if it sees it through my eyes will see a scheme of distributing drugs in which Miles, Eckert, and Zamorra were a party. That's the view-point of the trier of the facts. And it's extremely fortunate that they don't have felony convictions against them. It would take very little more evidence to establish that against them.
 
 
 13
 Eckert now argues that regardless whether Miles was credible he had a right under the Sixth Amendment to call him as a witness in his behalf. See Washington v. Texas, 1967, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019. It would have been the better practice for the trial court to have permitted Miles to testify on behalf of Eckert, but in the circumstances of this case we think that Eckert was not prejudiced by the exclusion of the evidence. It is important to remember that in this case the trial judge was the trier of facts. As such, he was the sole judge of the weight of the evidence. In the course of lengthy pre-trial proceedings and the trial itself, the trial judge had become thoroughly familiar with Miles's character and mental condition. Throughout the trial the judge was well aware of the substance of Miles's proposed testimony. In the end he found that corroboration by Miles would not add any weight to Eckert's testimony; the Government's evidence on the point was too convincing and Miles's credibility doubtful. In the limited circumstances of this case, therefore, any error in the exclusion of Miles's testimony was harmless. See Rule 52(a), F.R.Crim.P.; Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.
 
 
 14
 For the reasons set out above, the judgments of the district court are affirmed.
 
 
 
 [1]
 The indictment reads as follows:
 THE GRAND JURY CHARGES:
 That on or about May 7, 1969, ARTHUR HARRY ECKERT, aka Bunny Eckert, JAMES EDWARD MILES and JOE FELIX ZAMORRA, within the Western District of Texas, did unlawfully possess for the purpose of sale, delivery and other disposal to another a number of tablets and capsules of amphetamine and barbiturate, 'depressant or stimulant drug(s)' within the meaning of 21 U.S.C. 321(v), in violation of Title 21, United States Code, Section 331(q)(3)(A).
 COUNT TWO
 That on or about May 7, 1969, ARTHUR HARRY ECKERT, aka Bunny Eckert, JAMES EDWARD MILES and JOE FELIX ZAMORRA, within the Western District of Texas, did unlawfully possess a number of tablets and capsules of amphetamine and barbiturate, 'depressant or stimulant drug(s)' within the meaning of 21 U.S.C. 321(v), which were not obtained directly or pursuant to a valid prescription from a practitioner licensed by law to prescribe and administer such drugs while acting in the course of his professional practice, in violation of Title 21, United States Code, Section 331(q)(3)(B).
 
 
 [2]
 Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543
 
 
 [3]
 Since we find sufficient cause to justify the search of Zamorra's automobile under the Carroll doctrine, we need not decide whether the search might also be justified as a search incident to a valid arrest. See, e. g., United States v. Nooks, 5 Cir. See, e.g., United States v. Nooks, 5 Cir