STATE of Iowa, Appellee,

v.

James D. KING, Appellant.

No. 54682.

Supreme Court of Iowa.

Nov. 11, 1971.

Rehearing Denied Dec. 13, 1971.

David P. Miller, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., Edward N. Wehr, Scott County Atty. and A. Fred Berger, Jr., Asst. Scott County Atty., for appellee.

STUART, Justice.

James D. King was charged by county attorney's information with the crime of breaking and entering in violation of § 708.8, Code of Iowa. He pleaded not guilty and unsuccessfully sought to have certain evidence seized at the time of his arrest suppressed. A Scott County jury found him guilty of the crime charged. He appealed

from the court's judgment sentencing him to imprisonment in the state penitentiary at Fort Madison for a term not to exceed ten years assigning three grounds for reversal. (1) The court erred in admitting into evidence certain exhibits discovered as a result of an illegal search and seizure. (2) Defendant was denied due process by the delay of his former counsel in filing a brief in support of the motion to suppress. (3) The trial court, by abusing its discretion in certain rulings, denied defendant a fair trial.

On October 9, 1969, Officer Davenport of the East Peoria Illinois police department was on routine patrol when he noticed defendant and three male companions as they were leaving the Holiday Inn. When the men saw his police car they stopped, turned around and went back into the building. His suspicions aroused, Davenport awaited until the men reappeared. He approached them, identified himself, and asked the men some questions. Defendant admitted to Davenport that he had "done time" for armed robbery in Kentucky and stated that his home was in Middleton, Ohio.

Defendant and his companions then went back into the motel but came out again in a short time and drove off in a car with Kentucky plates. Davenport followed the car until it stopped and its passengers got out. He then returned to the Holiday Inn. A check at the registration desk revealed the defendant was in fact registered there as James D. King, but that the last four digits of the license number he had given when registering were different from those on the car he was driving.

Davenport testified he then went to the police station where he sent in a license check and a request on a possibly stolen automobile. He also contacted Middleton, Ohio, authorities who informed him defendant was part of an interstate burglary ring. The license plate check showed that the car was registered to someone who lived in Kentucky. Davenport went back to the Holiday Inn shortly after midnight to check on the names of alleged accomplices of the defendant supplied him by the Ohio authorities. He learned that a man registered under one of these names had made several calls to defendant's room through the motel switchboard.

The officer returned to police headquarters and placed a possible wanted on all the suspects and the vehicle with the Illinois state police who sent out a teletyped request to the National Crime Information Center (N.C.I.C.). At 5:00 a. m., October 10, the information came that none were wanted, and the surveillance at the motel was discontinued.

At 10:00 a. m on the 11th, the state police received a call from Lynn, Massachusetts authorities advising that they had an arrest warrant for Jimmy King on the charge of receiving stolen property. On this same morning the East Peoria Police were notified by the Ohio authorities that they had bench warrants for defendant's three companions. By the time these two phone calls had been received, the suspects had checked out of the Holiday Inn.

The Massachusetts authorities were asked to verify the warrant for the arrest of James D. King. They were furnished defendant's description including his full name and other data including information he was a white male. A teletype message was received on October 12 stating they had a warrant for the arrest of "Jimmy King". It was not discovered that the Jimmy King, a black male, wanted in Massachusetts was not the same person as the James D. King under investigation by the Illinois authorities until several days after defendant's arrest.

At 9:30 a. m. on October 12, the motel manager relayed information to the police that the four suspects were currently at the motel. State and local police officers set up a surveillance. As the officers watched, the four suspects and a woman companion came out of the motel. One of defendant's companions had a gun in his hand partly concealed under a jacket or sweater draped

cver his arm. The barrel of the gun was visible to the officers as the suspect walked toward the car. After they were in the car and defendant had started it, the officers closed in with their guns drawn. The suspects were ordered from the car. Davenport observed the handle of a revolver hanging underneath the dash. Also in plain sight were four pair of gloves, flashlights, a long screwdriver, and a pry bar, items the arresting officers knew were commonly used as burglary tools. There was an open box of coins on the floor of the car. The arrests occurred about 1:20 p. m.

Officer Davenport testified defendant refused to explain his possession of the car. He related that he asked defendant for permission to search the car, and defendant replied, "he could care less what we did as it wasn't his car". Defendant denied anyone had ever asked him if it was his car and also denied he had given the police permission to search it. It was later learned the car did in fact belong to defendant.

According to Davenport's testimony, defendant said he did not have a key to the trunk. The officers pried the trunk lid open and discovered a quantity of merchandise. As the weather was rainy, the car was towed to the police garage for inventorying. Articles listed in the inventory taken the same day were ones that had been taken in various burglaries in the Davenport area. Among the items were letters with the addresses of the homes that had been burglarized. These items provided the first connection of defendant with the Davenport burglaries.

I. Defendant's primary contention is that his arrest without a warrant and the warrantless search of his car which followed were illegal and the trial court erred in failing to suppress the evidence found in the search.

■ A. We shall first consider the legality of the arrest. Defendant states his complaint is mainly based on the fact that he was not the person sought by the Massa-

chusetts authorities and that his initial arrest, based on the Massachusetts warrant, was therefore illegal. We need not, and therefore do not decide whether the failure to make a reasonable effort to determine if the person to be arrested is the same person as the person sought under a valid warrant from another state renders a warrantless arrest of the wrong person illegal. See Hill v. California (1970), 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484. The facts and circumstances set forth above surrounding the arrest of defendant and his companions discloses that the officers had probable cause to make the arrest without a warrant.

■ As the United States Supreme Court stated in Draper v. United States (1959), 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332:

" 'In dealing with probable cause, * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, 338 U.S. [160] at 175, 69 S.Ct. [1302] at page 1310. Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543, 555, 39 A.L.R. 790]." See also: State v. Ricehill (Iowa, 1970), 178 N.W.2d 288, 291; State v. Vallier (Iowa, 1968), 159 N.W.2d 406, 408.

When Officer Davenport first encountered defendant, the defendant's actions were such that Davenport's suspicions were aroused. The defendant himself admitted to Davenport that he had a police record, and a check with the Middleton, Ohio, authorities revealed that defendant was known there as a "working felon". Davenport's investigation had disclosed that de-

fendant had given a false license number when registering at the motel. It was learned that the car defendant was driving was registered to a person in Kentucky.

Moreover, at the time of the arrest it had been ascertained there were bench warrants in Ohio for the arrest of defendant's three companions. One of these men was carrying a revolver he was attempting to conceal as he left the motel. There was probable cause to arrest defendant even in the absence of the Massachusetts warrant.

We therefore conclude defendant was lawfully arrested without a warrant.

B. The limited right of search and seizure predicated on the Fourth Amendment to the United States Constitution has been a troublesome problem for the United States Supreme Court and consequently for state and other federal courts. Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, 593; Chimel v. California (1969), 395 U.S. 752, 755, 89 S.Ct. 2034, 23 L.Ed.2d 685, 689.

In Chimel v. California, supra, Mr. Justice Stewart strictly limited a warrantless search incident to arrest. We have considered the search and seizure problem many times. We need not repeat the discussions here, but believe it would be helpful to briefly summarize the principles which appear to have vitality at the present time.

■ The Fourth Amendment does not prohibit all searches and seizures, but only those which are unreasonable. Elkins v. United States (1960), 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669, 1680; United States v. Rabinowitz (1950), 339 U.S. 56, 65, 70 S.Ct. 430, 94 L.Ed. 653, 660; State v. Ricehill (Iowa, 1970), 178 N.W.2d 288, 291–292; State v. Entsminger (Iowa, 1968), 160 N.W.2d 480, 483, and citations.

■ Warrantless searches are per se unreasonable under the Fourth Amendment subject only to "a few specifically established and well delineated exceptions". The burden is on those seeking to come within the exception to show the exigencies of the situation make such search imperative. Coolidge v. New Hampshire, supra, 29 L.Ed.2d at 576; Chimel v. California, supra, 395 U.S. at 761, 89 S.Ct. 2034, 23 L.Ed.2d at 693; Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576, 585; McDonald v. United States (1948), 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153, 158.

■ The standards of reasonableness are not susceptible to inflexible, preconceived application but depend upon the facts and circumstances of each case. Cooper v. California (1967), 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730, 732; Ker v. California (1963), 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726, 737–738; State v. Ricehill, supra; State v. Entsminger, supra; State v. Anderson (1967), 260 Iowa 122, 127, 148 N.W.2d 414, 417; Anno. "Warrantless Search of Automobile", 26 L.Ed.2d 893, 897.

■ Reasonableness is to be determined by balancing the need for the search against the invasion it entails. Camara v. Municipal Court (1967), 387 U.S. 523, 534, 536–537, 87 S.Ct. 1727, 18 L.Ed.2d 930, 938–940; Terry v. Ohio (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889, 905; State v. Entsminger, supra; State v. Vallier (Iowa, 1968), 159 N.W.2d 406, 408.

■ A warrantless search incident to a valid arrest, if properly limited, is reasonable. An arresting officer may search the person arrested in order to remove any weapons the latter might seek to use in order to resist arrest or effect his escape and to prevent the concealment or destruction of evidence. The arresting officer may, for the same reasons, search the area within the arrestee's immediate control, "construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence". Chimel v. California, supra, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694; State v. Brant (1967), 260 Iowa 758, 762, 150 N.W.2d 621, 624.

■ In terms of circumstances justifying a warrantless search, the court has long distinguished between an automobile and a home or office. An officer may search an automobile if he has reasonable or probable cause for believing it contains items which offend against the law. Chambers v. Maroney (1970), 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419, 426; Dyke v. Taylor Implement Mfg. Co. (1968), 391 U.S. 216, 221, 88 S.Ct. 1472, 20 L.Ed.2d 538, 543; Cooper v. California, supra; United States v. Di Re (1948), 332 U.S. 581, 585, 68 S.Ct. 222, 92 L.Ed. 210, 215; Scher v. United States (1938), 305 U.S. 251, 255, 59 S.Ct. 174, 83 L.Ed. 151, 154; Husty v. United States (1931), 282 U.S. 694, 700, 51 S.Ct. 240, 75 L.Ed. 629, 632; Carroll v. United States (1925), 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543, 551; State v. Baych (Iowa, 1969), 169 N.W.2d 578, 581; Anno: 26 L.Ed.2d at 900.

■ Exhibits which are in the plain view of an officer in a place where he has a legal right to be are admissible in evidence as they were not discovered as the result of a search and do not fall within the constitutional proscription against unreasonable searches and siezures. Harris v. United States (1968), 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067, 1069–1070; State v. Peterson (1968), 261 Iowa 669, 674, 155 N.W.2d 412, 415; State v. Brant, supra, 260 Iowa at 763, 150 N.W.2d at 625; Anno: 26 L.Ed.2d at 896–897.

■ Evidence obtained as a result of free and voluntary consent to an otherwise illegal search is admissible in evidence. The burden is on the state to prove such consent by clear and convincing evidence. State v. Baych, supra, 169 N.W.2d at 583; State v. Gates (1967), 260 Iowa 772, 774–775, 150 N.W.2d 617, 619; State v. Shephard (1964), 255 Iowa 1218, 1222, 124 N.W.2d 712, 714–715.

In view of these various rules, we believe the exhibits admitted into evidence in this case should be placed in two cate-

gories—(1) those found in the passenger compartment of the car and (2) those found in the locked trunk.

■ The admission of the evidence found in the passenger compartment of the car can be sustained under the "plain view" doctrine. The officers saw these items as they approached the automobile to make the arrests. There was no search, thus no violation of defendant's Fourth Amendment rights.

In Coolidge v. New Hampshire, supra, four of the justices took the position that the plain view doctrine should be limited to exhibits discovered inadvertently and a warrant should be obtained to search for items the officers could reasonably expect to find even if they were not concealed. This apparently was not the view of the majority of the court. In addition, we do not believe the minority would apply this rule to the facts before us. The *Carroll* rule was reaffirmed and *Chambers* was cited with approval. The opinion pointed out the exhibits seized in *Coolidge* did not "offend against the law". Here, we are dealing with burglary tools and a pistol. The box of coins would fall within the inadvertent discovery rule as they were not looking for the fruits of a crime at the time of the arrest.

■ The items in the locked trunk were not in plain view. The search of the trunk could not be justified as incident to a lawful arrest under Chimel v. California, supra; Chambers v. Maroney, supra; Dyke v. Taylor Implement Mfg. Co., supra; and Preston v. United States (1964), 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. Support for the admission of these exhibits must rest either on the free and voluntary consent to the search or the rule that the officers had reasonable cause to believe the trunk contained items that "offended against the law" at the time of the search.

As stated above, the burden is on the state to prove by clear and convincing evidence that consent was freely and volun-

tarily given. Although there was evidence tending to show consent, it is not very satisfactory and we do not place our decision on this ground.

Carroll v. United States, supra, first stated the rule that officers might search a motor vehicle if they had reason to believe it contained contraband. This rule was recently discussed in detail by Mr. Justice White in Chambers v. Maroney, supra, in which six other justices concurred. (Justice Harlan dissented—Justice Blackmun took no part.)

The following quotations from Chambers v. Maroney, supra, are applicable here.

"The Court [in *Carroll*] noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

" 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' 267 U.S. at 158–159, 45 S.Ct. at 287, 69 L.Ed. at 554. * *

"Neither Carroll, supra, nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in Carroll and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.

\*    \*    \*    \*    \*    \*

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater'. But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

\*    \*    \*    \*    \*    \*

"The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." 399 U.S. at 49–52, 90 S.Ct. at 1980–1981, 26 L.Ed.2d at 427–429.

The federal courts have relied on the *Carroll* doctrine quite frequently since it was restated in Chambers v. Maroney, supra. United States v. Miles (5th Cir., 1971), 445 F.2d 974, 975–976; United States v. Chalk (CCA, 1971), 441 F.2d 1277, 1279; United States v. Free (CADC, 1970), 437 F.2d 631, 634–635; United States v. Boyd (5th Cir., 1971), 436 F.2d 1203, 1204–1205; United States v. Roberts (5th Cir., 1970), 434 F.2d 1016, 1017; Boone v. Cox (4th Cir., 1970), 433 F.2d 343, 344. See also: Boyden v. United States (CCA, 1966), 363 F.2d 551, 553; People v. Ford (1969), 271 Cal.App.2d 725, 76 Cal. Rptr. 823, 826; People v. Upton (1968), 257 Cal.App.2d 677, 65 Cal.Rptr. 103, 107.

The four justices who did not believe the *Carroll* rule should be applied to the facts of Coolidge v. New Hampshire, supra, recognized the rule and indicated it could be applied if there was probable cause to believe the automobile contained contraband or stolen or dangerous items. 29 L. Ed.2d at 578–579.

The *Carroll* rule was not applied in Dyke v. Taylor Implement Mfg. Co. (1968), 391 U.S. 216, 88 S.Ct. 1472, 20 L. Ed.2d 538, 543, and Preston v. United States (1964), 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, because the police, at the time of the search had no reasonable or probable cause to believe the automobile contained items which offended against the law.

■ By applying the *Carroll* rule as explained in Chambers v. Maroney, supra, to the facts of this case, we reach the conclusion the officers, after discovering the pistol, gloves, burglary tools and coin box in the passenger compartment of the automobile had reasonable cause to believe the trunk might contain more guns and burglary tools or equipment as well as the fruits of crime. Under *Chambers* it was just as reasonable to search the car without a warrant as it would be to seize it and hold it until a warrant could be obtained. (The events took place on Sunday which would delay the obtaining of a search warrant.)

We hold the trial court did not err in overruling defendant's motion to suppress either category of exhibits and that they were properly admitted into evidence.

II. Defendant was arraigned in Scott County District Court February 17, 1970. Defense counsel filed a motion to suppress evidence March 3, 1970 which was heard May 15, 1970. Defendant's counsel was given two weeks to file a brief in support of this motion. No brief was filed. On September 29, 1970, defendant asked for the appointment of other counsel. This was done on October 13, 1970. A brief was filed as ordered on November 1, 1970. The motion to suppress was overruled November 5. Trial commenced November 18. During trial the state asked for a one-half day continuance because its last witness, an F.B.I. expert, was testifying in another trial. Defendant contends this one-half day delay, when he was ready to begin his defense, coupled with the ineffective assistance of his original counsel which delayed trial several months denied him procedural due process of law.

■ Certainly the one-half day continuance to enable a witness to attend trial was not unreasonable and did not in and of itself deny defendant due process. We are unable to understand why the procrastination of defense counsel here should inure to defendant's benefit and entitle him to freedom. Such a defense, if recognized, would be quite effective. The state has many obligations of its own to fulfill for defendant's benefit. We are not willing to add to that the responsibility for the inaction of defendant's own counsel.

We are not prepared to say the long delay in filing this brief deprived defendant of due process of law. Defendant fails to show how he was prejudiced in any way by either the one-half day delay, the delay in filing the brief or both. We do not believe he was denied a fair trial. State v. Moon (Iowa, 1971), 183 N.W.2d 644, 646; State v. Kendall (Iowa, 1969), 167 N.W.2d 909, 910–911; Scalf v. Bennett (1967), 260 Iowa 393, 399, 147 N.W.2d 860, 864.

There is no merit to defendant's second contention.

III. Defendant also calls our attention to several other matters which he claims together denied him a fair trial. We have examined them all and reach the conclusion the trial court acted well within its discretion and that there is so little substance in defendant's claim on this point, it merits no further discussion.

Finding no reversible error we affirm.

Affirmed.

The foregoing opinion by Justice STUART before he retired from the court on November 8, 1971, is adopted as the opinion of the court.

MOORE, C. J., and LeGRAND, REES, UHLENHOPP and REYNOLDSON, JJ., concur.

MASON and RAWLINGS, JJ., concur in the result, and BECKER, J., concurs specially.

BECKER, Justice (concurring specially).

I concur in the result. However, I cannot accept the broad statement, "An officer may search an automobile if he has reasonable or probable cause for believing it contains items which offend against the law." This is the thesis of Mr. Justice White's dissent in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564. Five (not four) Justices of the United States Supreme Court clearly rejected Mr. Justice White's position in Division II of the majority opinion. I therefore believe the majority opinion as now written is in error when it implies that the view of a majority of the court accepts Mr. Justice White's extension of the Carroll doctrine. The key vote in this analysis is that of Mr. Justice Harlan who said in part:

"Because of Mapp and Ker, however, this case must be judged in terms of federal standards, and on that basis I concur, although not without difficulty, in Parts I, II–D, and III of the Court's opinion and in the judgment of the court. It must be recognized that the case is a close one. The reason I am tipped in favor of Mr. Justice Stewart's position is that a contrary result in this case would, I fear, go far towards relegating the warrant requirement of the Fourth Amendment to a position of little conse-

quence in federal search and seizure law, a course which seems to me opposite to the one we took in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), two Terms ago." (loc. cit. at p. 491, 91 S.Ct. at p. 2050, 29 L.Ed.2d at pp. 597–598).

Mr. Justice Harlan's position must be clear from his dissent in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), where he states in part:

"In sustaining the search of the automobile I believe the Court ignores the framework of our past decisions circumscribing the scope of permissible search without a warrant. The Court has long read the Fourth Amendment's proscription of 'unreasonable' searches as imposing a general principle that a search without a warrant is not justified by the mere knowledge by the searching officers of facts showing probable cause. The 'general requirement that a search warrant be obtained' is basic to the Amendment's protection of privacy, and ' "the burden is on those seeking [an] exemption * * * to show the need for it." ' (Cases cited).

"Fidelity to this established principle requires that, where exceptions are made to accommodate the exigencies of particular situations, those exceptions be no broader than necessitated by the circumstances presented. * * *." (loc. cit. 399 U.S. at 61, 90 S.Ct. at 1986, 26 L.Ed.2d at 433–434).

" * * * The Court holds that those steps include making a warrantless search of the entire vehicle on the highway—a conclusion reached by the Court in Carroll without discussion—and indeed appears to go further and to condone the removal of the car to the police station for a warrantless search there at the convenience of the police. I cannot agree that this result is consistent with our insistence in other areas that departures from the warrant requirement

strictly conform to the exigency presented." (loc. cit. 399 U.S. at 62–63, 90 S.Ct. at 1987, 26 L.Ed.2d at 434–435).

It is therefore unwise and unwarranted to accept Mr. Justice White's probable cause-warrantless search doctrine as the view of a majority of the United States Supreme Court. Besides it is unnecessary. Here it can be found the driver and owner of the vehicle gave consent. This additional prickly point need not be handled.

In this case the evidence of consent to search is sufficiently satisfactory for me. I would affirm on that basis.