**STATE of Iowa, Appellee,**

v.

**Carlos David CERON, Appellant.**

No. 97–171.

Supreme Court of Iowa.

Dec. 24, 1997.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, Thomas S. Mullins, County Attorney, and Karrie S. Kelly, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO and ANDREASEN, JJ.

LAVORATO, Justice.

A jury convicted Carlos David Ceron of possession with intent to deliver a controlled substance (methamphetamine) and failure to affix a drug tax stamp. *See* 1996 Iowa Acts ch. 1164, § 2 (codified at Iowa Code § 124.401(1)(*b*)(7) (1997)); Iowa Code §§ 453B.3, 453B.12 (1995). Police found the methamphetamine during a search incident to a warrantless arrest for violation of a city ordinance prohibiting possession of drug paraphernalia. Ceron contends the officers had no authority to make a warrantless arrest for violation of an ordinance. Because trial counsel did not raise this issue in Ceron's motion to suppress the methamphetamine, Ceron asserts counsel was constitutionally ineffective. In the alternative, Ceron challenges the district court's denial of his motion to suppress on the ground the officers lacked probable cause to make the arrest. Finding no merit in either contention, we affirm.

I. *Background Facts and Proceedings.*

On September 5, 1996, Sioux City police officer Mark Skaff was on routine patrol. A car without a windshield caught his attention. The car was in a grocery parking lot. Two individuals exited the car and went in the direction of the grocery store. Skaff noted the license number of the car and contacted fellow officer Kraig Fulton who was in the area. Skaff told Fulton about the car and that they should stop the car if it moved onto a public street.

Several minutes later the car did exit the parking lot onto a public street. Fulton fell in behind the car which was approaching Skaff. Brian Doenhoefer was driving the car and Carlos Ceron was a front seat passenger. As the car was approaching, Skaff could see Ceron moving about with his hands down below the dash and appearing to look back at Fulton and then to Skaff in an excited manner.

In response to the officers' commands, Doenhoefer brought the car to a stop. The officers placed Doenhoefer under arrest for operating a motor vehicle without a windshield and for failing to produce a registration for the vehicle. Doenhoefer exited the car at which point Skaff hand-cuffed and searched him. Skaff told Fulton to remove

Ceron from the car and pat him down for weapons.

After Fulton searched Ceron, Fulton began searching the car and discovered cigarette rolling papers between the console and passenger seat. Skaff knew about Ceron's past drug involvement. Skaff also observed both Ceron and Doenhoefer had red, watery eyes, indicating the two had recently consumed narcotics.

On the basis of this information and the discovered rolling papers, Skaff arrested Ceron for possession of drug paraphernalia in violation of Sioux City municipal ordinance 8.20.050. Pursuant to the arrest, Skaff searched Ceron and a "baggie" of methamphetamine dropped from Ceron's pants.

The State ultimately charged Ceron with intent to deliver five or more grams of methamphetamine and failure to affix a drug tax stamp. *See* Iowa Code §§ 124.401(1)(*b*)(7), 453B.3, 453B.12.

Ceron moved to suppress the methamphetamine on the ground that the searching officers lacked probable cause to believe Ceron had violated the city's drug paraphernalia ordinance. The court denied the motion.

Although Ceron did not argue that Skaff lacked authority to arrest him without a warrant for violation of an ordinance, the court did note the following:

> Iowa Code section 804.7(1) and (2) provides in part "a peace officer may make an arrest ... without a warrant (1) for a public offense committed or attempted in the peace officer's presence, and (2) where a public offense has, in fact, been committed and the peace officer has reasonable ground for believing that the person to be arrested has committed it."
>
> A "public offense" is that which is prohibited by statute and is punishable by fine or imprisonment. A statute includes a municipal ordinance for which there is a criminal penalty.

The ordinance in question provided for a penalty.

A jury later found Ceron guilty on both counts: possession with intent to deliver and failure to affix a drug tax stamp.

Ceron appeals, raising two issues. First, he claims ineffective assistance of counsel for his attorney's failure to argue that Skaff lacked authority under Iowa Code section 804.7 to arrest him without a warrant for violation of Sioux City ordinance 8.20.050. He claims that *Wright v. City of Cedar Falls,* 424 N.W.2d 456 (Iowa 1988), conclusively establishes that a "public offense" is that which is prohibited only by an enactment of the General Assembly, not a municipal body. Absent such authority, Ceron contends the arrest and subsequent search that uncovered the methamphetamine were invalid necessitating suppression of the methamphetamine.

Second, Ceron appeals the district court's motion to suppress ruling. He argues that even if Iowa Code section 804.7 permits arrest for violation of ordinance 8.20.050, Skaff lacked probable cause to make the arrest based on possession of cigarette rolling papers. Without such probable cause, Ceron argues the search incident to that arrest was invalid and, for that reason, the methamphetamine was inadmissible.

II. *Scope of Review.*

■ Both issues raise constitutional questions. We review de novo constitutional challenges, including claims of ineffective assistance of counsel. *State v. Bayles,* 551 N.W.2d 600, 610 (Iowa 1996).

■ To the extent Ceron's challenges turn on the interpretation of a statute, our review is for errors of law. *State v. Adams,* 554 N.W.2d 686, 689 (Iowa 1996).

III. *Warrantless Arrest for Violation of Municipal Ordinance Committed in Officer's Presence.*

■ A. *Ineffective assistance of counsel.* A lawful arrest is, of course, a predicate for a lawful search incident to the arrest. *State v. King,* 191 N.W.2d 650, 654 (Iowa 1971) (arresting officer may search person arrested to ensure officer's safety and to prevent destruction or concealment of evidence). Thus, if Ceron's arrest for violation of the city ordinance was not lawful, Skaff's subsequent search of Ceron's person uncovering the methamphetamine was not lawful. In these

circumstances, the district court would have been obligated to suppress the methamphetamine. *See State v. Garcia,* 461 N.W.2d 460, 462–63 (Iowa 1990).

■ In the district court, Ceron's trial counsel did not argue that officer Skaff lacked authority under Iowa Code section 804.7 to make a warrantless arrest for a municipal code violation. If that argument is good, trial counsel was ineffective. Counsel is constitutionally ineffective under the Sixth Amendment of the federal Constitution when counsel fails to perform an essential duty and prejudice results. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 693 (1984).

■ Normally, we do not consider ineffective assistance of counsel claims on direct review, preferring to let the matter be explored in postconviction relief proceedings. *See State v. Bass,* 385 N.W.2d 243, 245 (Iowa 1986). We do, however, consider such claims on direct review when the record is clear and trial counsel's actions cannot be explained by plausible strategic or tactical considerations. *State v. Goff,* 342 N.W.2d 830, 838 (Iowa 1983). Such is the situation here. We therefore proceed to consider Ceron's ineffective assistance of counsel claim.

B. *Applicable law on warrantless arrest for a municipal code violation.* The common law does not authorize a peace officer to make a warrantless arrest for violation of a municipal ordinance committed in the officer's presence. 6A C.J.S. *Arrest* § 20, at 43 (1975). A statute must therefore authorize such an arrest. *Id.*

Turning to law applicable in Iowa, we note that a peace officer may make a warrantless arrest "[f]or a public offense committed or attempted in the peace officer's presence." Iowa Code § 804.7(1). Iowa Code chapter 807 does not define "public offense." However the Iowa Criminal Code defines a public offense as one "which is prohibited by statute and is punishable by fine or imprisonment." *Id.* § 701.2. Additionally, the Iowa Criminal Code provides that "[w]herever a term, word or phrase is defined in the criminal code, such meaning shall be given wherever it appears in the Code, unless it is being specially

defined for a special purpose." *Id.* § 702.1. That brings us to the merits of Ceron's claim that *Wright* controls here.

■ C. *The merits.* We begin our analysis by acknowledging that language in *Wright* appears to support Ceron's argument that Iowa Code section 701.2 means what it says: A "public offense" is that prohibited by statute and only the General Assembly may pass a "statute." 424 N.W.2d at 458–59. In *Wright,* we further emphasized that section 702.1 ("Wherever a term . . . is defined in the criminal code, such meaning shall be given wherever it appears in the Code . . . .") applied to all parts of the Code. *Id.* at 458. Thus, Ceron's argument is complete: section 804.7 allows warrantless arrests for "public offenses" committed in the officer's presence; under section 701.2 a "public offense" is that prohibited by statute; section 702.1 and *Wright* require section 804.7 to mean that a violation of an *Iowa Code provision* (not a municipal ordinance) allows a warrantless arrest.

■ In interpreting statutes, our goal is to ascertain and give effect to legislative intent. *State v. Sullins,* 509 N.W.2d 483, 485 (Iowa 1993). When more than one statute is relevant, we consider the statutes together and attempt to harmonize them. *Id.* We will construe a statute to avoid absurd results. *State v. Green,* 470 N.W.2d 15, 18 (Iowa 1991).

With these principles in mind, we turn to a closer analysis of *Wright.* The question presented in *Wright* was whether postconviction relief under Iowa Code chapter 663A (1985) (now Iowa Code chapter 822) is available to persons convicted of violating municipal ordinances. Iowa Code section 663A.1 provided that the postconviction relief provisions of chapter 663A applied to persons convicted of a "public offense." Chapter 663A did not define "public offense." Language in various parts of chapter 663A convinced us that the legislature did not intend to make postconviction relief available to ordinance violators. *Wright,* 424 N.W.2d at 458. It was only after reaching this conclusion that we used the language Ceron relies on here:

Petitioner contends in the alternative that the term "statute" in section 701.2 includes a municipal ordinance. We disagree. Laws enacted by the general assembly have historically been referred to as "statutes." A piece of city legislation, on the other hand, has been referred to as "an ordinance." Consequently, the term "statute" as used in section 701.2 refers to an enactment by the general assembly rather than enactment by the legislative body of a city.

*Id.* at 458–59 (citations omitted).

At the beginning of our analysis in *Wright*, we recognized "that in common usage, a municipal ordinance violation may be considered a public offense" and cited *Jaquith v. Royce*, 42 Iowa 406, 409 (1876) for the rule. In *Wright*, we did not overrule *Jaquith*. Rather, we simply acknowledged that despite this common usage there was strong evidence in chapter 663A that the legislature in enacting this chapter did not intend to provide relief to ordinance violators. *Id.* at 457–58. Thus, the true reasoning of *Wright* sprang not from a statutory definition of "public offense" but rather from language in chapter 663A indicating the legislature did not intend the provisions of that chapter to apply to ordinance violators. We therefore now conclude *Jaquith* remains good law outside of the context of a postconviction relief action.

Other statutory provisions signal the legislature's intent to make ordinance violations grounds for arrest as "public offenses" under section 804.7. For example, Iowa Code chapter 805, which governs citations in lieu of arrests, proceeds on the assumption that peace officers have the authority to make warrantless arrests for ordinance violations committed in their presence. Except for nonbailable offenses (Iowa Code section 811.1) and stalking offenses (Iowa Code section 708.11), "a peace officer having grounds to make an arrest may issue a citation in lieu of making an arrest without a warrant or, if a warrantless arrest has been made, a citation may be issued in lieu of continued custody." Iowa Code § 805.1(1). Chapter 805 applies to traffic and other violations designated as scheduled violations. *Id.* § 805.1(2). Iowa Code sections 805.6 through 805.15 govern

these offenses. Iowa Code section 805.6(1)(a) directs the commissioner of public safety, the director of transportation, and the director of natural resources, acting jointly, to "adopt a uniform, combined citation and complaint which shall be used for charging all traffic violations in Iowa under state law or local regulation or *ordinance.* ... " *Id.* § 805.6(1)(a) (emphasis added).

A similar example is found in Iowa Code section 805.16(1). This provision authorizes a peace officer to "issue a police citation or uniform citation and complaint in lieu of making a *warrantless arrest* to" a juvenile "accused of committing a simple misdemeanor under ... a *local ordinance.* ... " *Id.* § 805.16(1) (emphasis added).

Taking Ceron's narrow interpretation of section 804.7 to its ultimate conclusion would lead to an impractical, absurd, and unlikely result: Any prosecution for an ordinance violation would depend upon the violator's voluntary submission to prosection. We reach this conclusion for the following reasons.

Section 804.7 governs a police officer's authority to make an arrest in all instances. The officer "may make an arrest in obedience to a warrant delivered" to the officer. *Id.* § 804.7. Iowa Code section 804.1 governs arrests by warrants. It provides that

> [a] criminal proceeding may be commenced by the filing of a complaint before a magistrate. When such complaint is made, charging the commission of some designated *public offense* in which such magistrate has jurisdiction, and it appears from the complaint or from affidavits filed with it that there is probable cause to believe an *offense* has been committed and a designated person has committed it, the magistrate shall ... issue a warrant for the arrest of such person.

*Id.* § 804.1 (emphasis added). Thus, Ceron's argument that a public offense does not include an ordinance violation would mean that the magistrate could not lawfully issue a warrant for the arrest of a person charged with the violation of a city ordinance.

Section 804.7 also governs a police officer's authority to make a warrantless arrest. Such officer may make a warrantless arrest:

(1) "[f]or a *public offense* committed or attempted in the peace officer's presence;" (2) "[w]here a *public offense* has in fact been committed, and the peace officer has reasonable ground for believing that the person to be arrested has committed it;" and (3) "[w]here the peace officer has reasonable ground for believing that an indictable *public offense* has been committed and has reasonable ground for believing that the person to be arrested has committed it." *Id.* § 804.7(1), (2), and (3) (emphasis added). Similarly, Ceron's argument that a public offense does not include an ordinance violation would mean that the peace officer could not make a warrantless arrest of an ordinance violator.

Thus, under Ceron's interpretation of a public offense, a peace officer could never arrest—with or without a warrant—for violation of an ordinance.

We reject Ceron's argument and hold that for purposes of section 804.7 a public offense includes a violation of a city ordinance carrying a penalty of fine or imprisonment. Because Ceron's argument is based on an erroneous interpretation of section 804.7, counsel did not breach an essential duty in failing to raise a meritless argument.

## IV. *Probable Cause for the Arrest.*

Ceron next contends that officer Skaff lacked probable cause to arrest him for possession of drug paraphernalia and for that reason the district court should have sustained his motion to suppress the methamphetamine. In support of his contention, he argues that possession of cigarette rolling papers does not provide probable cause for arrest.

■ A. *Applicable law.* The Fourth Amendment to the Federal Constitution guarantees "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures...." The Due Process Clause of the Fourteenth Amendment makes the Fourth Amendment clause protections enforceable against the states. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). A search is *per se* unreasonable unless such

search is pursuant to a recognized exception such as a search incident to an arrest. *King,* 191 N.W.2d at 654. For this exception to apply, the arrest must be valid and if not valid the evidence must be suppressed. *Garcia,* 461 N.W.2d at 463.

■ To be valid, a warrantless arrest must be supported by probable cause. *United States v. Watson,* 423 U.S. 411, 423–24, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, 609 (1976). Probable cause exists when the facts and circumstances within the arresting officer's knowledge would warrant a person of reasonable caution to believe that an offense is being committed. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959); *see* Iowa Code § 804.7(3) (warrantless arrest authorized where peace officer has "reasonable ground" for believing arrestee committed offense). The "reasonable ground for belief" standard of Iowa Code section 804.7(3) is the same as probable cause. *State v. Harris,* 490 N.W.2d 561, 563 (Iowa 1992).

■ Before the district court may make a finding of probable cause,

the facts must rise above mere suspicion but need not be strong enough to sustain a guilty conviction. All of the evidence available to the arresting officer may be considered, regardless of whether or not each component would support a finding of probable cause by itself. Seemingly innocent activities may combine with other factors to give an experienced police officer reasonable grounds to suspect wrongdoing.

*Id.* (citations omitted).

■ B. *The merits.* The ordinance under which Ceron was arrested makes it unlawful "to use, or to possess with intent to use, drug paraphernalia to ... ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of the Uniform Controlled Substances Act ... of the Code of Iowa." The ordinance defines drug paraphernalia as "all materials of any kind which are used, intended for use, or designed for use, in ... ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the Uniform Controlled Substances Act" in the Iowa

Code. The decisive question then is whether officer Skaff had probable cause to believe Ceron was in possession of drug paraphernalia, that is, the cigarette rolling papers. If the officer had such probable cause, then the arrest for violation of the ordinance was valid and the search that uncovered the methamphetamine, a controlled substance, was valid.

For the reasons that follow, we think officer Skaff had probable cause to make a warrantless arrest of Ceron for violation of the ordinance. First, Skaff was an experienced police officer with fifteen years of service, six of which he worked with a drug investigation unit.

■ Second, Skaff recognized Ceron from prior contacts involving drug activity. The officer testified about an incident in September 1995, in which he and another officer found a baggie of methamphetamine and cigarette rolling papers on Ceron. The officer also testified that Ceron had told him in the past that he used marijuana and was a member of a Los Angeles-based gang called the "Kings Boulevard Stoners." Ceron told the officer that the name "Stoners" described the gang members' marijuana use. Skaff further testified that he knew that Ceron had a conviction for possession of marijuana. The officer also knew that Ceron and his brother had been involved in drug trafficking in the Sioux City area for some time. Contrary to Ceron's contention, Ceron's prior drug activity including his drug conviction could properly be considered on the question of probable cause. *See United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723, 733 (1971) (holding an officer's knowledge of a suspect's reputation may be used to form basis of informant's reliability for a search warrant); *Brinegar v. United States,* 338 U.S. 160, 162, 177, 69 S.Ct. 1302, 1304, 1311, 93 L.Ed. 1879, 1884, 1891 (1949) ("[O]ne who recently and repeatedly has given substantial ground for engaging in [a specific crime] has no such immunity [from being stopped] if the officer who intercepts him . . . knows that fact at the time he makes the interception and the circumstances under which it is made are not such as to indicate the suspect is going about legitimate affairs.").

Third, Skaff saw that Ceron and Doenhoefer had red, watery eyes. To Skaff, an experienced police officer, this indicated possible drug use.

Last, when officer Fulton searched the car, he found the cigarette rolling papers in close proximity to Ceron, between the console and passenger seat, where Ceron had been seated.

Skaff testified that in his experience working with a drug investigation unit he knew that cigarette rolling papers are used to roll marijuana cigarettes.

All of these factors, when considered together, would warrant a person of reasonable caution to believe Ceron intended to use the cigarette rolling papers to inhale marijuana, a controlled substance, in violation of the ordinance. In short, these factors constituted probable cause to support Ceron's arrest for possessing drug paraphernalia in violation of the ordinance. The lawful arrest validated the subsequent search that uncovered the methamphetamine. The district court therefore properly denied Ceron's motion to suppress.

Ceron cites several cases for the proposition that cigarette rolling papers do not, in and of themselves, provide probable cause for arrest. *See Thomas v. Superior Ct.,* 22 Cal.App.3d 972, 976, 99 Cal.Rptr. 647 (1972); *Caplan v. State,* 531 So.2d 88, 91 (Fla.1988); *Angaran v. State,* 681 So.2d 745, 746 (Fla. Dist.Ct.App.1996); *State v. Galloway,* 116 N.M. 8, 859 P.2d 476, 479 (Ct.App.1993); *People v. Baldon,* 51 A.D.2d 880, 380 N.Y.S.2d 181, 182 (1976). We agree with the State that these cases are distinguishable. The cases were dealing with issues of probable cause for arrests for possession of drugs or searches for drugs, not possession of drug paraphernalia. Although *Thomas* holds that possession of a hand-rolled cigarette does not alone provide probable cause for arrest for drug possession, the decision also makes clear that such probable cause exists *if the item itself is contraband.* 22 Cal.App.3d at 976, 99 Cal.Rptr. 647. Similarly, *Caplan* notes that mere possession of hand-rolled cigarettes provides no probable cause for a drug possession arrest unless other factors

are present, such as furtive movements, possession of drug paraphernalia, or drug odors. 531 So.2d at 92.

In contrast to the cases Ceron cites, Skaff did not arrest Ceron solely because he was in possession of cigarette rolling papers. We have cited a combination of factors supporting the officer's reasonable belief that Ceron possessed the cigarette rolling papers as drug paraphernalia.

## V. *Disposition.*

Contrary to Ceron's contention, a public offense for purposes of Iowa Code section 807.4 includes a violation of a municipal ordinance providing for a penalty of fine or imprisonment. Accordingly, Ceron's trial counsel was not constitutionally ineffective for failing to argue otherwise.

Because there was sufficient probable cause for officer Skaff to believe the cigarette rolling papers were drug paraphernalia, the arrest and subsequent search of Ceron were valid. The district court therefore correctly denied Ceron's motion to suppress.

Finding no constitutional violations, we affirm.

**AFFIRMED.**